622 So.2d 952 (1993)
Tommy SAAVEDRA, Petitioner,
v.
STATE of Florida, Respondent.
No. 77886.
Supreme Court of Florida.
June 3, 1993.
Rehearing Denied September 3, 1993.
*954 Wm. J. Sheppard, Elizabeth L. White and Michael R. Yokan of Sheppard and White, P.A., Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen. and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for respondent.
HARDING, Justice.
We have for review Saavedra v. State, 576 So.2d 953 (Fla. 1st DCA 1991), based on conflict with Padron v. State, 328 So.2d 216 (Fla. 4th DCA), cert. denied, 339 So.2d 1172 (Fla. 1976).[1]
The issue for review is whether a minor may consent to a police officer's warrantless entry into a parent's home. We hold that a minor may provide valid third-party consent to a warrantless entry if the State can show: 1) the minor shares the home with an absent, nonconsenting parent;[2] 2) the police officer conducting the entry into the home reasonably believes, based on articulable facts, that the minor shares common authority with the parent to allow entry into the home;[3]and 3) by clear and convincing evidence that the minor's consent was freely and voluntarily given under the totality of the circumstances.
The State charged Tommy Saavedra (Saavedra) and Donald Teater (Teater), with burglary, armed kidnapping, and three counts of sexual battery which occurred when they broke into their next-door neighbor's home, forcibly removed a twelve-year-old girl and repeatedly assaulted her in a nearby park.
K.A., the victim, testified that on the evening of June 24, 1987, at approximately 10:30 p.m., there was a power failure in the neighborhood and that she and her sister sat on their front porch. Next door, K.A. saw her brother and cousin speaking to Saavedra, Teater, Tommy Saavedra, Jr. and his cousin Robbie Methvin. When the power was restored, K.A. went next door and got her brother and cousin, returned home, and shortly thereafter went to bed. At *955 approximately 2:00 a.m., K.A. stated that she was awakened by a sharp object sticking in her side. She saw Saavedra, who was kneeling beside her bed dressed in a black karate suit, and another man, who was also dressed in a black suit and hood, standing behind him. Saavedra threatened to kill K.A. if she made any noise. As the men forced her outside, the hood fell off the other man and K.A. recognized him as Teater.
Saavedra and Teater led the victim to a nearby park, tore off her t-shirt and underwear, pushed her to the ground and forced her to have intercourse with each of them. The men then led her to a slide in the park and again forced her to have intercourse. Teater then unsuccessfully attempted anal intercourse. Finally, the men led her to a concrete circle in the middle of the park and forced her to have intercourse again. After these attacks, which lasted over an hour, Saavedra told K.A. that "the next-door neighbors can't help you now." Saavedra and Teater fled the park and left K.A. behind. K.A. then gathered her clothing, went home and told her brother about the attacks.
At approximately 3:30 a.m., the police arrived at K.A.'s house after receiving a report of a sexual battery. When K.A. identified her attackers as her next-door neighbors, Saavedra and Teater, Officer Robert Benfield went to Saavedra's home and knocked on the door. Two other officers began looking into the windows with their flashlights. One of the officers testified that he saw two persons lying in the bed, and thus he began to knock louder in order to arouse the occupants.
Officer Benfield testified that he went to the back door and began to knock. A young boy, later identified as Saavedra's fifteen-year-old son, answered the door. According to Officer Benfield, he identified himself and told the boy that he needed to speak to an adult. The boy then gave him permission to enter the home. Officer Benfield entered the home and walked past the boy to a nearby bedroom where he arrested Teater. Two other officers entered the home and arrested Saavedra in an adjacent bedroom. The officers then placed Saavedra and Teater in the back of the police car, and K.A. identified them as her attackers. The next morning the police obtained Saavedra's consent to search his home where they found two pairs of black pants, one of which was located in Saavedra's room, as well as a black hood. Both pants were soiled, and one was wet with sand.
The trial court denied Saavedra's motion to suppress the evidence obtained from his home after his warrantless arrest. The jury convicted him of burglary, armed kidnapping, and three counts of sexual battery. The First District Court of Appeal upheld the trial court's denial of Saavedra's motion to suppress as well as his three convictions for sexual battery. Saavedra, 576 So.2d at 963. In affirming the trial court, the district court held that a minor could grant valid consent to enter a home and concluded that under the totality of the circumstances Saavedra's son granted valid consent. Id. at 959. In reaching its decision, the district court rejected the Fourth District Court of Appeal's holding in Padron, 328 So.2d at 217. In Padron, the Fourth District Court of Appeal made a per se rule that a minor did not share common authority with a parent over the home, and thus the minor could not grant valid consent for the police officers to enter the home.[4] 328 So.2d at 217.
*956 Saavedra raises two issues for our review: 1) whether the trial court erred in denying his motion to suppress evidence obtained following the police officer's warrantless entry into his home and arrest; and 2) whether the trial court properly convicted him of three separate charges of sexual battery.
The first issue we address is the police officer's warrantless entry into Saavedra's home and his subsequent arrest. In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held "that the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Id. at 576, 100 S.Ct. at 1374-75 (citations omitted). As the Court stated:
The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home  a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses . .. shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.
Id. at 589-90, 100 S.Ct. at 1381-82. Thus, the rule of law is that absent consent or exigent circumstances, the police may not make a warrantless entry into a suspect's home in order to make a felony arrest.
The issue here is whether a minor may grant consent for a police officer to enter a home that the minor shares with a parent.[5] We hold that the State must show by clear and convincing evidence from the totality of the circumstances that the minor gave free and voluntary consent.[6]Cf. Norman v. State, 379 So.2d 643 (Fla. 1980). In addition, because the minor shares the home with a parent, the consent must satisfy the third-party-consent test. This Court has stated that "[t]he test for a valid third-party consent to a warrantless search is whether the third party has joint control of the premises." Ferguson v. State, 417 So.2d 631, 634 (Fla. 1982). Furthermore, a joint occupant or one sharing dominion and control over the premises may provide valid consent only if the party who is the target of the search is not present or if the party is present and not does not object to the search. Silva v. State, 344 So.2d 559, 562 (Fla. 1977). In cases of third-party consent, the United States Supreme Court has stated:
[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but *957 may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.
United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The Supreme Court then explained in a footnote that:
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 171 n. 7, 94 S.Ct. at 993 n. 7 (emphasis added) (citations omitted).
The validity of the minor's consent hinges on the determination of whether it is reasonable to recognize that a minor may permit, in his or her own right, a police officer's entry into the home. The only Florida case to address this issue is Padron, which adopted a per se rule that minors do not share common authority with parents over the home, and thus cannot consent to an entry. Other states which have addressed this issue have declined to follow the holding in Padron, and have instead applied a case-by-case approach to determine the scope of a minor's common authority to consent and whether the consent was knowing and voluntary. See Doyle v. State, 633 P.2d 306, 307-308 (Alaska App.Ct. 1981) (holding that the general rules which apply to all warrantless search cases apply in determining whether a minor gave valid consent); Atkins v. State, 173 Ga. App. 9, 325 S.E.2d 388, 391 (1984) (holding the common authority test in Matlock applied in determining whether a minor may consent to entry into a home) affirmed 254 Ga. 641, 331 S.E.2d 597 (1985); People v. Swansey, 62 Ill. App.3d 1015, 20 Ill.Dec. 211, 214, 379 N.E.2d 1279, 1282 (1978) (holding that the minor shared common authority because "where two people have an equal right to the use or occupancy of a home, either may consent to a search of that home"); State v. Folkens, 281 N.W.2d 1, 4 (Iowa 1979) (holding that a fourteen-year-old had common authority over the home to allow a search in her own right); In re Anthony F., 293 Md. 146, 442 A.2d 975, 978 (1982) (holding that the record supported the trial judge's determination that a minor who appeared to be thirteen years old "possessed sufficient authority to allow the officers to enter the living room of the home"); State v. Scott, 82 Or. App. 645, 729 P.2d 585, 588 (1986) (holding that the common authority test in Matlock applied in Oregon; thus the court reversed and remanded the case to determine the scope of the minor's consent to allow entry into the home); but see Commonwealth v. Garcia, 478 Pa. 406, 387 A.2d 46, 55 (1978) (holding that sixteen-year-old minor did not have dominion over the home equal to the parent because the parent had the power to determine the extent of the minor's authority to admit people into the house); and Hembree v. State, 546 S.W.2d 235, 241 (Tenn. Crim. App. 1976) (stating that the rights of an eighteen-year-old son to use or occupy the premises are not necessarily equal to the rights of use or occupation of his parents).
Because this Court must decide search and seizure cases in conformity with the Fourth Amendment "as interpreted by the United States Supreme Court," we adopt the common authority test set out in Matlock for determining whether a minor may grant consent to allow a police officer entry into the parent's home.[7] In applying the Matlock test, Florida courts should focus on whether the police officer had a reasonable belief based on articulable facts that the minor shared joint authority over *958 the home with the parent.[8] In determining the reasonableness of the police officer's belief, the courts should consider the minor's age, maturity, and intelligence. The courts should also consider any other facts which might show that a police officer reasonably believed that a minor shared joint authority over the home, such as whether the minor had permission to allow entry into the home, whether the minor had a key to the home, and whether the minor shared common household duties with the parent. Certainly, it would be unreasonable to suggest that a child of tender years shared common authority with the parent over entry into a home. See Laasch v. State, 84 Wis.2d 587, 267 N.W.2d 278, 282 (1978) (holding that the state did not show that defendant's five-year-old son possessed the capacity, the intelligence, or the authority to give constitutionally effective consent). Moreover, in determining the scope of the minor's common authority we have held that third-party consent "cases have generally been decided on the basis of the individual's reasonable expectation of privacy in the area, whether others generally had access to the area, and/or whether the objects searched were the personal effects of the individual unavailable to consent." Silva, 344 So.2d at 563.
At the suppression hearing before the trial court below, Officer Benfield testified about his actions in entering the house:
ASSISTANT STATE ATTORNEY: Okay. What did you do specifically?
OFFICER BENFIELD: I went to the rear door and knocked on it.
ASSISTANT STATE ATTORNEY: Okay. Did anything happen?
OFFICER BENFIELD: Yes, ma'am. A young white male answered the door.
ASSISTANT STATE ATTORNEY: Okay. Did you get the identity of that person who answered the door?
OFFICER BENFIELD: No, ma'am.
ASSISTANT STATE ATTORNEY: Can you describe what the approximate age was of this young white male?
OFFICER BENFIELD: Age is probably between about 12 to 13, somewhere in that area.
ASSISTANT STATE ATTORNEY: Okay. Did you say anything to him?
OFFICER BENFIELD: I informed him that I was Officer Benfield with the sheriff['s] office, was there to  and I needed to speak to an adult inside the residence. And if I may come in and he said, yes, and he opened the door and I went inside.
ASSISTANT STATE ATTORNEY: Okay. Was anyone with him when he opened the door?
OFFICER BENFIELD: No ma'am.
ASSISTANT STATE ATTORNEY: He was alone?
OFFICER BENFIELD: Yes, ma'am.
....
ASSISTANT STATE ATTORNEY: Did anyone else come out at the time that you were at the door with this young man?
OFFICER BENFIELD: No.
ASSISTANT STATE ATTORNEY: Other than him saying come in, did you have any other conversation with him there at the door?
OFFICER BENFIELD: No ma'am.
ASSISTANT STATE ATTORNEY: Did he identify for you who was inside the premises?
OFFICER BENFIELD: No ma'am, he didn't say.

*959 ASSISTANT STATE ATTORNEY: Okay. Did you ask him was there any one else at home?
OFFICER BENFIELD: I asked him if there were any adults and he said, yes, there were.
ASSISTANT STATE ATTORNEY: When you walked inside and walked towards the bedroom, what did this young boy do?
OFFICER BENFIELD: I have no idea. He was behind me and I didn't see where he went from there.
ASSISTANT STATE ATTORNEY: Did you have any further contact with this young boy?
OFFICER BENFIELD: No.
Officer Benfield also gave the following testimony on cross-examination by the defense attorney:
DEFENSE ATTORNEY: And did you ever ask the young man who he was or what connection he had with the premises?
OFFICER BENFIELD: No, ma'am.
DEFENSE ATTORNEY: And the young man did not lead you through the house after you obtained entry by stepping across the threshold, isn't that true?
OFFICER BENFIELD: He did not lead me in, no, ma'am.
DEFENSE ATTORNEY: After you entered the door and after you stepped over the threshold after the young man opened the door, you in essence were on your own in the house, isn't that right?
OFFICER BENFIELD: That's fair to say.
Officer Benfield's testimony shows that he did not conduct an inquiry or elicit any facts upon which he could have reasonably determined that the boy answering the door had common authority over the house. Thus, we find that Officer Benfield acted unreasonably and that the entry was without valid third-party consent. Because we find that the third-party consent was invalid, we do not reach the issue of whether the State showed by clear and convincing evidence that Saavedra's son gave free and voluntary consent under the totality of the circumstances.
Normally, the next question we would address is whether the officers entered Saavedra's house based on exigent circumstances. However, we find that we do not need to reach this issue in order to resolve the instant case. Assuming arguendo that Saavedra is correct that the entry was absent exigent circumstances and that his subsequent consent to the search of his house was tainted by an illegal arrest, we find that the convictions should be upheld because the admission of the evidence was harmless error.
In State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), this Court stated:
The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
Id. at 1135 (citation omitted). After closely reviewing the record, we find that the State has proved beyond a reasonable doubt that the error in the instant case did not contribute to the verdict. The verdict was strongly supported by K.A.'s in-court identification of both Saavedra and Teater as her attackers, the medical testimony that corroborated K.A.'s testimony about her injuries, and the expert testimony that tied semen found in the victim's vagina to Saavedra and Teater. Thus, even if the trial court erred in admitting evidence obtained following an illegal arrest, we find the error to be harmless.
Saavedra's final issue is whether the trial court erred in convicting him for three counts of sexual battery arising from one criminal episode. We find that the district *960 court correctly held that the facts show that Saavedra committed three separate sexual batteries against the victim. Carawan v. State, 515 So.2d 161 (Fla. 1987). Thus, the trial court correctly sentenced Saavedra for three separate sexual batteries.
Accordingly, we approve the decision below and disapprove Padron to the extent that it is inconsistent with this opinion.[9]
It is so ordered.
OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, C.J., concurs specially with an opinion.
KOGAN, J., concurs in result only with an opinion, in which BARKETT, C.J., and SHAW, J., concur.
BARKETT, Chief Justice, concurring specially.
I write to express additional reasons why the evidence should have been suppressed by the trial court and to underscore the majority's concerns regarding whether minors are capable of understanding and waiving their own rights, let alone those of their parents.
The majority correctly concludes that the invalid consent of fifteen-year-old Tommy Saavedra Jr. rendered the arrest unlawful. As a result of that unlawful police action, the trial court was obliged to suppress the victim's out-of-court identification made while Petitioner sat in a police car outside the Saavedra home moments after his arrest, and the wet black pants and hood found in a separate consent search the next morning.[10] Although this evidence certainly was damning, the State presented a strong case with properly admitted evidence, including the victim's testimony; her in-court identification of Petitioner; corroborative medical and expert testimony that was fully consistent with the victim's account; and other physical evidence.[11] On the totality of this record, I am convinced beyond a reasonable doubt that the jury would have reached the same result even without the inadmissible evidence.
The consent question in this case involves discrete but oftimes overlapping issues.[12] Under Florida law, the State must *961 prove by clear and convincing evidence that Tommy Saavedra Jr. actually consented to the warrantless home entry, and that his consent was voluntary, not the product of coercion. Norman v. State, 379 So.2d 643, 646 (Fla. 1980) ("In Florida, the prosecution must show by clear and convincing evidence that the defendant freely and voluntarily consented to the search."); Bailey v. State, 319 So.2d 22, 27 (Fla. 1975) (evidence of consent must be "clear and convincing").[13] Necessarily subsumed within the State's burden, as the majority notes, is that it must prove the consenting party had the authority to consent to the home entry and scope of police conduct at issue. Failure to establish these facts by clear and convincing evidence renders the consent invalid as a matter of Florida law. The majority writes only about this last issue. I believe the other consent issues require some comment.
With respect to proof of actual consent, the record shows direct conflict between the testimony of officers and youths at the scene. Saavedra and fourteen-year-old Robbie James Methvin testified that officers pushed their way into the home without seeking permission to enter. Both Officer Benfield and Sergeant Pease contradicted that testimony, saying that Saavedra openly agreed to allow them to enter after they separately sought his permission when he came to the door. Benfield also testified that had he been denied consent he would have to have obtained an arrest warrant, although he never once had obtained an arrest warrant in twelve years on the police force. A persuasive argument could be made that the State failed to prove actual consent on these facts, but the trial court acted within its discretion to find actual consent.
Having said the trial court acted within its discretion to find actual consent, the next inquiry is whether that consent was voluntary under the totality of the circumstances, a question the majority does not reach. See majority op. at 959. Uncontradicted evidence shows that young Saavedra was awakened at 3 a.m. by the loud banging of police on the windows and doors of the house and the glare of police flashlights shining out of the blackness of night through the windows. Saavedra saw police cars parked in the driveway when he looked outside. Saavedra then opened the rear door where Officer Benfield was banging. He saw the officer standing there in *962 full uniform with his badge displayed, requesting entrance. Saavedra testified that he was scared and shaken up, and he immediately let the officer in.
What minor would have felt free to do otherwise? This was at least as coercive as the situation in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), where the Court found that a consensual home entry had been coerced by the assertion of deputies that they had a search warrant. These facts are unrefuted and I would find them inherently coercive, presenting a situation, as Judge Barfield noted, where free and voluntary consent cannot be provided. Saavedra v. State, 576 So.2d 953, 964 (1st DCA 1991) (Barfield, J., dissenting). Accordingly, I would find that the State failed to prove voluntary consent under the totality of the circumstances.
The consent issue becomes quite complex when dealing with the police's reliance on the consent of a juvenile. In such cases courts face unique practical problems. Minors, especially children of tender years, are almost always going to consent to a police officer's request. Parents and teachers routinely teach children to distrust strangers, respect authority, and trust the police. As a result, children commonly acquiesce to a law enforcement officer's assertion of authority.
In many cases a child will lack "that degree of mental discretion necessary for a minor to give valid consent to the search of his, and his parents', home." Davis v. State, 262 Ga. 578, 422 S.E.2d 546, 550 (1992). Consequently, courts will be compelled to find that the "child simply did not know or completely understand what the consequences of his consent would be." Id.
Yet another troubling consequence of allowing juveniles to consent to police searches is the extent to which law enforcement may seek to rely on this rule. This decision must not be construed as an invitation to look for opportunities when officers know a juvenile is present in the home they wish to search without a warrant. The rule must be narrowly applied so as not to carve out a "juvenile's consent" exception to the Fourth Amendment warrant requirement.
I am compelled to conclude, as the majority does, that the burden on the State to prove voluntary authorized consent must be a heavy one and must be strictly adhered to. It follows that some minors are capable of exercising the kind of discretion necessary to consent to police action under certain circumstances. Cases cited in the majority's analysis, and other cases on the subject, correctly embody many criteria that officers and courts should consider in determining the validity of consent. Such factors include the youth's physical, mental, and emotional age, maturity, and intelligence; the child's understanding of the right to decline consent; the ability to understand the consequences of his or her actions; the child's right of access to the premises (such as guest or resident, permanent or temporary, recent or long-established, possession of or access to a key); whether the child commonly was left alone on the premises; the scope of access the youth shares with others (common areas such as kitchen and yard as opposed to more private areas such as bedrooms and bathrooms); the child's right of invitation (such as whether he or she has permission to invite friends into portions of the home at certain times of day); special instructions given to the child by others who share access to the property; the time of day and related circumstances under which officers seek access; representations officers make to the child when they seek consent; whether others who share access to the premises are present or reasonably available in order to vitiate the need to seek the minor's consent; and whether somebody with access had already declined to consent.
It must be remembered that consent is an exception to the constitutional rule that law enforcement officers must have a proper warrant to enter the home. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). If the validity of a child's consent is dubious and no exigent *963 circumstances exist, officers must get a warrant.
I also agree with the majority's sensitivity to children of tender years, see majority op. at 958, but I would draw a line at the age of thirteen under which no child can legally consent to allow police to conduct a warrantless home entry, search or seizure. The Legislature has drawn many lines to distinguish the capacity and rights of juveniles, and specifically has recognized that a child under the age of thirteen does not have the capacity to consent to confinement to negate the charges of kidnapping or false imprisonment if confinement is without a parent's consent. §§ 787.01(1)(b), 787.02(1)(b), Fla. Stat. (1991). The same public policy ought to apply here as well. I cannot believe that any child of such tender years would have sufficient capacity, maturity, intelligence, or authority to ever legally consent to a police entry, search, or seizure, thereby obviating the constitution's warrant requirement.
For the reasons expressed above, I concur with the majority's conclusion in this case.
KOGAN, Justice, concurring in result only.
I have no quarrel with the result reached here or the finding of harmless error. However, there is no need to adopt the test set out in United States v. Matlock, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974), because it is clear that this search fails under any construction of the law and facts. Moreover, I do not agree that article I, section 12 requires us to conform Florida law with Matlock or Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Those two cases dealt only with the question of whether adults can authorize the search of a home where those adults are, or purport to be, coinhabitants.
Both Matlock and Rodriguez, assume that adults usually possess the ability to give consent with respect to property they jointly inhabit with others. I do not believe we can make the same assumption for children. If anything, it is common for parents to deny their children any authority over the house and especially the authority to open the door for strangers  even if the strangers happen to be police officers. Accordingly, those opinions are distinguishable and do not constitute controlling law in the present case. Because we need not anticipate the United States Supreme Court's future actions here, I would not do so.
BARKETT, C.J., and SHAW, J., concur.
NOTES
[1] Jurisdiction is based on article V, section 3(b)(3) of the Florida Constitution.
[2] In United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the United States Supreme Court stated that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." A parent is considered absent if at the time and place the police officer asks the minor for entry into the home, the parent is not physically present with the minor.
[3] We note that the initial entry into the home would indicate that the officer may be admitted into any of the common-living areas of the house where a caller might normally be admitted. However, before the officer may be admitted into other areas of the house, the officer must have the reasonable belief that the child shares common authority over those areas with the parent as well. This reasonable belief also must be supported by some articulable facts for the third-party consent to be valid.
[4] In Padron v. State, 328 So.2d 216 (Fla. 4th DCA), cert. denied, 339 So.2d 1172 (Fla. 1976), the police arrested a defendant at his home for homicide and placed him in the back of the police car. The defendant refused to give the police permission to search his home. An officer then asked the defendant's sixteen-year-old son for permission, but the son also denied the police entry. The officers then ordered all persons out of the home, including the defendant's nine-year-old son, who was ill. At that point, the sixteen-year-old son acquiesced and allowed the entry and search of the home. The Fourth District Court of Appeal held that a minor did not share common authority over the home with a parent, and thus could not grant valid consent to search the home. Furthermore, the court stated that even if the minor did share common authority with the father, the minor could not grant consent where the father was present and had asserted his rights. Id. at 218. In addition, the court also found that, under the circumstances of the case, the son's consent was

not freely and voluntarily given. Id. The First District Court's decision in Saavedra only conflicts with the per se rule in Padron. Thus, this Court is only addressing the narrow issue of whether a minor shares common authority with a parent over the home to allow a police officer entry.
[5] Although the issue in this case is entry into a home to make a warrantless arrest, rather than to conduct a warrantless search, the United States Supreme Court does not distinguish between the two in determining reasonableness under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 589-90, 100 S.Ct. 1371, 1381-82, 63 L.Ed.2d 639 (1980); see also Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects.").
[6] In Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1981), we held that "[u]nder ordinary circumstances the voluntariness of the consent to search must be established by preponderance of the evidence." Because the issue in the instant case addresses the question of a minor granting consent to enter a parent's home, we find that the higher standard of clear and convincing evidence is appropriate.
[7] Art. I, § 12, Fla. Const.
[8] In determining whether the minor gave valid consent, the inquiry must focus on the reasonableness of the police officer's belief. In Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court stated that the

determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... `warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists.
Id. at 188, 110 S.Ct. at 2801. (citation omitted) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).
[9] Although we reject the district court's holding in Padron that a minor does not share a common authority with a parent in a home, we agree with the district court that it would be unreasonable for a police officer to believe that where a parent is present and asserting his or her rights, the minor has authority to override that assertion. As we have held:

It is only reasonable that the person whose property is the object of a search should have controlling authority to refuse consent. His rights are personal to him and derive from the United States Constitution. Though a joint occupant should have authority to consent to a search of jointly held premises if the other party is unavailable, a present, objecting party should not have his constitutional rights ignored because of a leasehold or other property interest shared with another.
Silva v. State, 344 So.2d 559, 562 (1977) (citation omitted). Therefore, we disapprove Padron only to the extent that it is inconsistent with this opinion.
[10] In Norman v. State, 379 So.2d 643, 647 (Fla. 1980), this Court held that when consent is obtained after an illegal arrest, "the unlawful police action presumptively taints and renders involuntary any consent to search," and the consent will be held voluntary only if there is "clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." There is no evidence in this record to show that the State satisfied its burden to attenuate the taint between the illegal arrest and the subsequent consent made during interrogation the next morning. Cf. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Miranda warning is insufficient to dissipate the taint of a confession made several hours subsequent to an illegal arrest).
[11] For example, police discovered Saavedra's pry tool and screwdriver on the driveway next to the victim's home, both of which were introduced without objection. Evidence showed that the door of the victim's home may have been pried open, and the victim had been assaulted with a screwdriver during the criminal episode.
[12] Proof that consent was given is a very different question from whether evidence supports a finding that consent, if given, was valid. See, e.g., Alvarez v. State, 515 So.2d 286, 288 (Fla. 4th DCA 1987) ("When consent to search is relied on as the justification, the state must not only prove that consent was given, but must also prove that such consent was freely and voluntarily given... ."); accord Laasch v. State, 84 Wis.2d 587, 267 N.W.2d 278, 282 (1978) (distinguishing the requirement to prove that a five-year-old actually consented to a search, from the requirement that the state prove voluntariness of the consent); see generally Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2 n. 7 (2d ed. 1987). The United States Supreme Court cases in this area have drawn this distinction in their analyses. For example, in Stoner v. California, 376 U.S. 483, 489, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964), the Court found clear and unambiguous proof that a hotel clerk had given police permission to search Stoner's room, but held the search invalid because the clerk had no right to consent to that search. See also Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (with clear evidence of consent to enter the home, the Court focused on whether police reasonably believed that the person who gave consent had the authority to do so); United States v. Matlock, 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974) (focusing not on consent, which had been established, but on whether the person who gave consent had the authority to do so.) In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), the Court again was faced with undisputed proof that deputies were given permission to search the home, but held the consent invalid because deputies effectively coerced the consent and the state therefore failed to prove that consent was freely and voluntarily given. See also Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (having clear proof that officers got permission to search the vehicle, the Court focused on whether that consent had been given voluntarily when there was no proof that the consenting party knew he had the right not to consent).
[13] I agree with the majority that in cases where a minor is asked to give consent, or where law enforcement gets consent from any person after officers fail to comply with the law, Florida law requires the State to prove valid consent by clear and convincing evidence. Majority op. at 956 & n. 6. The Court's reliance on both Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1981), and Norman v. State, 379 So.2d 643 (Fla. 1980), properly recognizes that the clear and convincing evidence burden must be applied at least "where the consent follows an illegal arrest, seizure, search, detention, or some other coercion." State v. Fuksman, 468 So.2d 1067, 1072 (Fla. 3d DCA 1985) (Pearson, J., concurring specially).