624 So.2d 402 (1993)
STATE of Florida, Appellant,
v.
Laurie Goldman JUSTICE, Appellee.
No. 92-220.
District Court of Appeal of Florida, Fifth District.
September 24, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and James T. Cook, Asst. Public Defender, Daytona Beach, for appellee.
DIAMANTIS, Judge.
The State of Florida appeals the trial court's order granting the motion to suppress filed by appellee Laurie Goldman Justice.[1] On appeal, the state contends that the trial court erred in concluding that the police failed to obtain valid consent to search corporate offices and to seize corporate records. We agree and, therefore, reverse the order suppressing the corporate documents.
*403 On October 1, 1990, a fire gutted God's Love Center (GLC), a not-for-profit corporation which provided free care to indigent people in need of medications. Shortly thereafter, Dr. Jerry Reynolds, a GLC board member, voluntarily went to the Eustis Police Department and reported his suspicions that the GLC fire was not accidental. Specifically, Dr. Reynolds related that in May or June 1990 the board members had questioned the propriety of certain expenditures made by Justice. Justice was the founder of GLC, a member of its board of directors, and the director of GLC's daily operations. As the operating director, she occupied a private office at GLC in which she maintained all of GLC's corporate records.
As a result of obtaining this information, the police, through Dr. Reynolds, requested the consent of the board of directors to search GLC and to seize GLC's corporate records and documents. Dr. Reynolds called an emergency meeting of GLC's board of directors, which was held at the Eustis Commission Chambers. Six board members were present at the meeting, and they voted unanimously to provide the police with the keys to GLC and to authorize the police to enter GLC, to search the premises, and to seize GLC's corporate records. The police were not present at the board meeting. The board members present intentionally failed to notify Justice of the emergency meeting, so she was not present and did not vote. In fact, at the suggestion of the police, the board members suspended Justice from the board because of concerns that she still had the corporate checkbook.
The police subsequently entered GLC and searched for any financial documents belonging to GLC, such as papers, checks, and ledgers. The police seized file drawers containing GLC's financial records from Justice's office but did not seize any of her personal belongings. In addition to the documents seized, the police obtained records from board members who voluntarily provided items to the police. Based on information contained in the documents, the state charged Justice with fraud,[2] grand theft,[3] and two counts of forgery.[4]
Justice filed a motion to suppress the corporate documents which were seized from her office, claiming that the board of directors did not have the authority to consent to a search of her office or a seizure of GLC's records. The trial court granted the motion, and this appeal followed.
Because Florida courts must decide search and seizure cases in conformity with the Fourth Amendment "as interpreted by the United States Supreme Court,"[5] our supreme court has adopted the common authority test set forth in United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).[6]See Saavedra v. State, 622 So.2d 952 (Fla. 1993). Under the common authority test,
when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.
Matlock, 415 U.S. at 171, 94 S.Ct. at 993. In determining whether the third party's consent is valid, the inquiry must focus on the reasonableness of the police officer's belief regarding the party's authority to consent to the search. Saavedra, 622 So.2d at 960 n. 9. In this regard, the United States Supreme Court, subsequent to Matlock, stated that the
determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... `warrant a man of reasonable *404 caution in the belief'" that the consenting party had authority over the premises?
Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (citation omitted) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-1881, 20 L.Ed.2d 889 (1968)).
At the hearing on the motion to suppress, Justice testified that other members of the board of directors could gain access to the corporate files contained in her private office only if they made an appointment with her to do so. The board members who testified acknowledged that they would have asked Justice before gaining access to the corporate records or documents of GLC, and they agreed that Justice was the custodian of the records. They also testified, however, that, as board members, they had the ability to inspect these records or documents whenever they wanted. More importantly, they testified that, at the time they voted to allow the police to enter GLC to secure its corporate records and documents, they believed that they had the authority to grant such permission.[7] Similarly, the police testified that they did not question the board's authority to consent to the search and seizure, and they received no indication from the board that they lacked the authority to consent.
In the present case, a person of reasonable caution would be warranted in believing that the majority of the board had authority over the premises searched and the property seized. The board members themselves believed that they had such authority, and the police testified that they had no basis to question the board's authority. This court has recognized that "[g]enerally the board of directors represents the corporation and conducts its business." Charron v. Coachmen Industries, Inc., 417 So.2d 1145, 1146 (Fla. 5th DCA 1982). See also Tail of the Pup, Inc. v. Webb, 528 So.2d 506 (Fla. 2d DCA 1988) (only board of directors has authority to waive or assert corporation's attorney-client privilege); Mease v. Warm Mineral Springs, Inc., 128 So.2d 174 (Fla. 2d DCA), cert. denied, 132 So.2d 291 (Fla. 1961) (board of directors represents corporate body, and directors are entrusted with authority to conduct and manage corporation's affairs); § 617.0801, Fla. Stat. (Supp. 1990) (all corporate powers must be exercised under authority of board of directors). Accordingly, in this case the board had apparent authority to consent to the search of the corporate offices and to the seizure of corporate records, and the police reasonably relied upon such apparent authority.[8]
We further note that the record contains no evidence that the police, either explicitly or impliedly, used coercion, threats, or force, or made any misrepresentations, committed any fraud, or used any pretext, to obtain the corporate records. Thus, there *405 was no evidence of police misconduct which would make the exclusionary rule applicable.[9] In fact, a member of the board initiated contact with the authorities, and the board, with the sole exception of Justice, voluntarily voted to provide the police with keys to the corporate offices and to authorize the police to enter and search the offices and seize corporate records. Under these circumstances, no question is presented concerning whether the board's consent to the search and seizure was voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 228-29, 93 S.Ct. 2041, 2048-49, 36 L.Ed.2d 854 (1973).
Because we conclude that a majority of the board had the apparent authority to consent to the search and seizure, that the police reasonably relied on this authority, and that the board voluntarily consented to the search and seizure, we reverse the trial court's suppression order and remand for further proceedings.
REVERSED and REMANDED.
HARRIS, C.J., and GOSHORN, J., concur.
NOTES
[1] See Fla.R.App.P. 9.140(c)(1)(B).
[2] § 817.034(4)(a)(3), Fla. Stat. (1989).
[3] §§ 812.014(1), 812.014(2)(c)(1), Fla. Stat. (Supp. 1988).
[4] § 831.01, Fla. Stat. (1989).
[5] Art. I, § 12, Fla. Const.
[6] We accept for purposes of this appeal that Justice had the requisite expectation of privacy in the corporate premises searched and the corporate documents seized. Dean v. State, 478 So.2d 38, 40-42 (Fla. 1985).
[7] The board members later learned that, under the corporation's bylaws, a unanimous vote was required to authorize board action.
[8] Because of our holding that a majority of the board had apparent authority, we need not reach the issue as to whether the board had actual authority to consent to the search and seizure given the unanimity requirement of the corporation's bylaws; however, in light of section 617.0830, Florida Statutes (Supp. 1990) (general standards for directors), and section 617.0832, Florida Statutes (Supp. 1990) (director conflicts of interest), we have serious reservations concerning whether Justice could have voted on the matter of the board consenting to the search and seizure. Moreover, courts faced with analogous situations have recognized the individual authority of various corporate officers or agents to turn over or to allow inspection of corporate records by governmental officials. See, e.g., United States v. Jamieson-McKames Pharmaceuticals, Inc., 651 F.2d 532, 542-43 (8th Cir.1981), cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982) (business partner of professional corporation with unlimited access to work area had authority to consent to search); United States v. Harte-Hanks Newspapers, 254 F.2d 366, 369 (5th Cir.), cert. denied, 357 U.S. 938, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958) (no illegal search and seizure where corporation representative consented to government's entry onto corporate premises and later voluntarily provided corporate documents per government's request); United States v. H.J.K. Theatre Corp., 236 F.2d 502, 506 (2d Cir.1956), cert. denied, 352 U.S. 969, 77 S.Ct. 359, 1 L.Ed.2d 323 (1957) (corporate officer-treasurer had apparent and actual authority to voluntarily turn over corporate records to government); United States v. Antonelli Fireworks Co., 155 F.2d 631, 636 (2d Cir.), cert. denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946) (corporation office manager and records custodian had authority to consent to government's examination of corporate records).
[9] Justice argues that suppression was required because the police engaged in misconduct when they suggested that the board suspend her without notice because she still had the corporate checkbook. We reject this argument because any requirement of notice to remove Justice from the board was not relevant to the issue of the board of directors' apparent authority to voluntarily consent to the police's search of the corporate offices and seizure of corporate documents.