744 So.2d 586 (1999)
Shannon Kay DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-04346.
District Court of Appeal of Florida, Second District.
November 17, 1999.
*587 James Marion Moorman, Public Defender, Bartow, and Richard P. Albertine, Jr., Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
When pleading no contest to a charge of possession of heroin Shannon Davis reserved the right to appeal the denial of her dispositive motion to suppress evidence obtained during a warrantless search of her home. We agree that the circuit court erred in denying Davis's motion.
Detective Landsberg testified at the suppression hearing that a burglary suspect told him that Davis had attempted to cash checks taken in the burglary. The suspect also implicated Davis's boyfriend, Michael Carl. Detectives Landsberg and Eastmond executed a search warrant at Carl's residence. They recovered a gun from his room, as well as ammunition, another gun, cocaine, heroin and paraphernalia from other parts of the residence. Carl was not present during the search.
The next day, the officers decided to visit Davis's residence to talk to her about the burglary and to find Carl. They did not obtain a search warrant for the home or arrest warrants for either Davis or Carl. Detective Landsberg testified he had probable cause to arrest Carl because he had learned that the gun found in the earlier search had been stolen. He believed he had probable cause to arrest Davis for uttering forged instruments.
When the detectives arrived at Davis's home, Carl had just walked outside. While Landsberg arrested and searched him, Detective Eastmond approached the residence. The front door was open. Eastmond saw Davis standing just inside the door and, beyond her, a man lying on a couch. Eastmond showed Davis his badge and gun and asked her and the man to step outside and place their hands on a car. The detective did not arrest Davis, but requested permission to search her house. Davis agreed and went back inside the house with Eastmond. While inside, he inquired whether she had any firearms or illegal drugs. She handed him a change pouch containing heroin. He then asked her to sign a written consent-to-search form, which she did. Landsberg arrived and advised Davis of her Miranda[1] rights.
At the conclusion of the hearing, the circuit court denied Davis's motion to suppress, ruling that Detective Eastmond had the right to require Davis to leave her residence for his own safety and the safety of others. It found that the officer did not detain Davis at that time, but merely stopped her for the purpose of ascertaining whether she was armed. The court also determined that a break occurred between this stop and the search of Davis's home. Finally, it found that Davis voluntarily surrendered the heroin.
We first disagree with the circuit court's conclusion that Davis was not detained. Davis's counsel presented extensive argument concerning whether Detective Eastmond had "asked" Davis to leave her home, or "instructed" her to do so. This semantic distinction is irrelevant. In Popple v. State, 626 So.2d 185, 188 (Fla. 1993), our supreme court noted that it did not matter whether the deputy's direction to Popple to step out of his car was "characterized as a request or an order." The show of authority restrained the defendant's freedom of movement because a reasonable person, under similar circumstances, would believe he had to comply. Thus, the Popple court held that the officer seized the defendant. The same reasoning applies here. Eastmond showed Davis his badge and gun and instructed her to place her hands on a car. This *588 show of authority resulted in a seizure and a detention.
The next question then is whether the detention was illegal. Section 901.151, Florida Statutes (1997), permits an officer to detain a citizen temporarily if the officer has a reasonable suspicion that the citizen has committed, is committing or is about to commit a crime. See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Davis had been identified as a suspect in a burglary. Moreover, law enforcement had seized guns and ammunition from the residence of other suspects in the same burglary. These facts would give law enforcement the well-founded, articulable suspicion of criminal activity required for an investigatory stop under the Fourth Amendment. See Popple, 626 So.2d at 186. Clearly, if Eastmond had encountered Davis on the street, he could have detained her to question her. But Davis was standing inside her home.
In this regard we note that the language of section 901.151 seems to contemplate that the detained person be outside her home: "[T]he officer may temporarily detain such person for the purpose of ascertaining ... the circumstances surrounding the person's presence abroad...." § 901.151, Fla. Stat. (1997) (emphasis supplied). Moreover, "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." Payton v. New York, 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (internal citations omitted). Absent consent or exigent circumstances, law enforcement may not cross the threshold of a residence without a warrant. See id. at 589-90, 100 S.Ct. 1371 Saavedra v. State, 622 So.2d 952, 956 (Fla.1993).
We realize, of course, that Detective Eastmond did not initially enter Davis's home; instead, he directed her to step outside. But law enforcement cannot avoid the dictates of Payton and Saavedra by ordering suspects out of their homes, then arresting or detaining them as if they had been encountered "abroad." As previously noted, Eastmond's direction to Davis constituted a seizure; she did not voluntarily consent to leave her residence. Nor did this case involve exigent circumstances. Detective Landsberg testified he developed probable cause to arrest Davis and Carl at least a day earlier. He had ample time to obtain an arrest warrant. Law enforcement officers may not sit and wait when they could be obtaining a warrant, and then employ this self-created delay to concoct exigent circumstances. See Hornblower v. State, 351 So.2d 716 (Fla.1977). Davis's detention was illegal under Payton and Saavedra.
Davis did, however, turn over the heroin to the officer. We conclude that her surrender of the drugs was the fruit of Detective Eastmond's earlier illegal conduct. Consent after a prior illegal police action must be carefully scrutinized because the improper action presumptively taints voluntariness. See Deleon v. State, 700 So.2d 718 (Fla. 2d DCA 1997). "When the initial police activity is illegal, the State must establish by `clear and convincing evidence' that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given." Jordan v. State, 707 So.2d 338 (Fla. 2d DCA 1998) (internal citations omitted). As we explained in Jordan, the taint is dissipated when the police tell the suspect of her right to refuse consent. See id. at 339.
Detective Eastmond did not advise Davis of any rights before he asked her whether she was in possession of drugs. Only after Davis handed Eastmond the heroin was she advised of her Miranda rights and asked to sign a consent-to-search form. The chain of illegal conduct was not broken. Accordingly, we reverse the court's denial of Davis's motion to suppress *589 the drugs and her statements, and vacate the order placing her on probation.
Reversed.
THREADGILL, A.C.J., and STRINGER, J., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).