834 So.2d 400 (2003)
Jason FAULKNER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-5437.
District Court of Appeal of Florida, Second District.
January 17, 2003.
*401 James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Charlie Crist, Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Jason Faulkner, charged with possessing cocaine and drug paraphernalia, moved to suppress the evidence seized from him during a roadside search. The circuit court denied the motion. Faulkner then pleaded no contest to the charges while reserving his right to appeal the dispositive suppression issue. We reverse.
The evidence at the hearing on Faulkner's motion to suppress disclosed that Faulkner was riding as a passenger in his own car when Polk County Sheriff's Deputy Christopher Gilbert observed it running a stop sign. After Deputy Gilbert stopped the car, Faulkner attempted to get out. Deputy Gilbert ordered him to remain in the vehicle. At the hearing the deputy recounted that he did this for general safety purposes; he did not suspect Faulkner of criminal conduct or of being a threat. Deputy Gilbert proceeded to investigate the driver who, it developed, had no driver's license. He then had Faulkner come to the rear of the patrol car and asked for his identification. At this point, Deputy Gilbert realized that Faulkner was listed on the vehicle registration as its owner. He asked Faulkner why he had allowed an unlicensed driver to operate the car. Faulkner explained that he had been drinking and did not feel comfortable driving. He had asked his friend to drive without realizing that the friend had no license.
Deputy Gilbert then asked Faulkner whether he was carrying a weapon or drugs. Faulkner said he was not. The deputy asked Faulkner if he could pat him down, and Faulkner agreed. When Deputy *402 Gilbert patted Faulkner's pocket, he felt a hard, round object, which he asked Faulkner to identify. Faulkner told him it was a "socket." Deputy Gilbert asked to see it, whereupon Faulkner retrieved the item from his pocket, voiced the observation that he was "screwed," and handed Deputy Gilbert a socket-wrench socket. The socket had electrical tape wrapped around one end and contained a wire mesh insert. Deputy Gilbert testified that he was aware that this type of apparatus was used to smoke illegal drugs.
Faulkner's counsel argued that his consent to the search and to the production of the socket were products of an illegal detention that began when Deputy Gilbert ordered him to stay inside the car. For this proposition he relied on the Fourth District's Wilson v. State, 734 So.2d 1107 (Fla. 4th DCA 1999), which holds that an officer conducting a traffic stop may not order a passenger to remain in the vehicle absent a reasonable suspicion that the passenger has engaged in criminal activity or poses a threat to the officer's safety. The circuit court rejected this argument, as follows:
The Defendant was determined to be the registered owner of the car. Pursuant to Florida Statute 322.36, a vehicle owner commits a second degree misdemeanor when he allows someone to drive his vehicle if he is aware that the person has a suspended license. The State argues that this justified the officer's order to have the Defendant remain in the car. The Court agrees. Not only was the passenger a witness to the driver's crime of driving on a suspended license and the civil traffic infraction, but he also was the subject of a criminal investigation. Since this satisfies the "reasonable suspicion of criminal activity" requirement of Wilson, the Court finds that the detention was lawful and that the evidence was obtained legally as a result of Defendant's consent which Defendant did not deny.
Of course, the problem with that analysis is that Deputy Gilbert ordered Faulkner to stay in the car before he knew either that the driver was not licensed or that Faulkner owned the vehicle. As the deputy acknowledged, when directing Faulkner to remain in the car he did not suspect him of criminal conduct or of being a threat.
In Pennsylvania v. Mimms, 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that for general safety purposes an officer may routinely order the driver of a lawfully stopped vehicle to exit the vehicle. The Court reached this conclusion by balancing the public interest in officer safety against the driver's interest in being free from arbitrary interference by law enforcement. The Court noted that when the vehicle is already stopped, the slight additional intrusion associated with being directed to exit the car "can only be described as de minimis." Mimms, 434 U.S. at 111, 98 S.Ct. 330. The Court extended this reasoning to passengers in Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Applying the Mimms balancing test, the Court held that passengers, too, may be required to exit a vehicle that has been lawfully stopped for a traffic offense.
As the Fourth District noted in its Wilson decision, however, "a command preventing an innocent passenger from leaving the scene of a traffic stop to continue on his independent way is a greater intrusion upon personal liberty than an order simply directing a passenger out of the vehicle." Wilson, 734 So.2d at 1111-12. The court observed that such "cannot be classified as a de minimis intrusion." Id. at 1112. Rather, the court wrote, it is an unreasonable interference. Id. We *403 agree. When an innocent passenger is directed to exit a vehicle, he is detained only in a legal sense; his movement is restricted merely to the extent that there is a single place he may not go. But a passenger who is ordered to remain in the vehicle suffers a far greater intrusion upon his personal liberty because he is forbidden go anywhere other than that one place. In other words, he is fully detained in both law and fact. See Barrios v. State, 807 So.2d 814 (Fla. 4th DCA 2002) (holding that innocent passenger's arrest for resisting a police officer without violence was improper because passenger could resist officer's direction to stand at the side of the vehicle). We conclude that it is illegal to detain a passenger in this manner absent a reasonable suspicion that the passenger has committed a crime or is a threat.
The circuit court's error in this regard necessarily affected its assessment of Faulkner's consent to the patdown and the request to produce the socket for Deputy Gilbert's inspection. Generally, the State bears the burden to prove the voluntariness of a consent to search by a preponderance of evidence. Reynolds v. State, 592 So.2d 1082 (Fla.1992). But when the consent follows illegal police activity, the State's burden is significantly heavier. In such circumstances the consent is presumptively involuntary, and the State may overcome this presumption only by clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action. Reynolds, 592 So.2d at 1086; Norman v. State, 379 So.2d 643, 647 (Fla.1980).
Here, the State proved no such break in the chain of illegality that began when the deputy ordered Faulkner to stay inside the car. To the contrary, the detention continued when the deputy ordered Faulkner to the rear of the patrol car and questioned himstill without a reasonable suspicion that Faulkner had engaged in criminal conduct or posed a threat. For this reason, the presumption remained that Faulkner's consent was involuntary, and the circuit court should have granted his motion to suppress. See Davis v. State, 744 So.2d 586 (Fla. 2d DCA 1999); Satterfield v. State, 609 So.2d 157 (Fla. 2d DCA 1992); Reed v. State, 577 So.2d 1362 (Fla. 2d DCA 1991).
Reversed and remanded with directions to discharge the defendant.
BLUE, C.J., Concurs.
SILBERMAN, J., Concurs specially with opinion.
SILBERMAN, Judge, Specially concurring.
As to the officer's direction to Faulkner to stay in the car, there was no evidence that Faulkner posed a threat to the officer's safety, to Faulkner's own safety, or to the safety of others. See Wilson v. State, 734 So.2d 1107, 1112 (Fla. 4th DCA 1999). Instead, the officer testified that he was concerned because the area was "a high crime area and a high narcotics area." The fact that the encounter occurred in such an area is not, by itself, sufficient to establish a reasonable concern for the safety of persons or property. See Jaudon v. State, 749 So.2d 548, 549 (Fla. 2d DCA 2000); Coleman v. State, 707 So.2d 767, 768 (Fla. 2d DCA 1998). Because of the lack of evidence to support Faulkner's detention, and for the other reasons expressed in the majority opinion, I concur.