WHATLEY, Judge.
The State appeals the order granting N.G.B.’s motion to suppress the marijuana found on his person during a search of him at his school by the school resource officer. In the suppression order, the trial court found that N.G.B. did not consent to the search and that the school resource officer did not have the proper legal basis for conducting the search. We reverse because the trial court erred in concluding that the school resource officer needed probable cause to search N.G.B.
We do not reverse on the consent issue because we cannot say that the trial court’s determination of that issue was clearly erroneous. The testimony regarding exactly what the school resource officer asked N.G.B. and what N.G.B. answered was conflicting, and the trial court is in the best position to resolve conflicts in testimony. See Davis v. State, 594 So.2d 264 (Fla.1992) (stating that whether suspect voluntarily consents to search is question of fact and trial court’s determination of that question should not be disturbed unless it is clearly erroneous). Therefore, the issue presented by this case is whether the school resource officer needed probable cause to search N.G.B.
N.G.B. was a middle school student assigned to the alternative behavior classroom, a room in which students serve in-school suspensions. One of the students in this classroom, F.B., reported to the teacher that there was what appeared to be a baggie of mariguana on the floor. The teacher reported this discovery to Ms. An- *568 dress, the assistant principal, and advised her that the baggie was found in the aisle between the desks of N.G.B. and a female student. Ms. Andress called Deputy Mantzanas, the school resource officer for this middle school, to meet her in the Alternative Behavior Classroom because she knew she “would need him eventually.” Both Ms. Andress and Deputy Mantzanas questioned and searched several students and their belongings. Ms. Andress found a note that mentioned N.G.B. and smoking marijuana. Deputy Mantzanas asked the class if anyone had any idea where the marijuana came from, and F.B. spontaneously stated that he thought it had fallen out of N.G.B.’s pocket. Deputy Mantzanas searched N.G.B. after he and Ms. Andress thought he had secured N.G.B.’s consent to do so. In N.G.B.’s front left pocket, Deputy Mantzanas found a baggie containing marijuana residue and a full nickel bag of marijuana. The nickel bag was very similar to the baggie found on the floor.[1]
In the suppression order, the trial court found that Deputy Mantzanas had reasonable suspicion to search N.G.B. because of F.B.’s statement, because the baggie of marijuana was found close to N.G.B., because of the deputy’s knowledge that N.G.B. associated with persons who smoked marijuana, and because of the note that indicated a plan to smoke marijuana. We agree that these facts provided reasonable suspicion to search N.G.B. The trial court also found, however, that these facts did not rise to the level of probable cause that would permit a sheriffs deputy to conduct a nonconsensual search of N.G.B. Although Deputy Mantzanas was a school resource officer, the trial court concluded that because he was employed by a law enforcement agency[2] (the Pinellas County Sheriffs Office), he is not a school official for purposes of the exception set forth in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In that case, the United States Supreme Court held that the legality of searches of school students by school officials “should depend simply on the reasonableness, under all the circumstances, of the search.” Id. at 341, 105 S.Ct. 733. The Court specifically stated that it was not deciding the issue of “the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies. ...” Id. at 341 n. 7, 105 S.Ct. 733.
Since T.L.O., numerous state and federal courts have applied the T.L.O. standard to searches of school students involving varying degrees of law enforcement involvement. “[Cjourts apply the T.L.O. reasonableness standard to those cases where a school official initiates the searches on his own or law enforcement involvement is minimal. Courts characterize these cases as ones in which the police officers act ‘in conjunction with’ the school official.” In the Matter of D.D., 554 S.E.2d 346, 351 (N.C.Ct.App.2001) (quoting Cason v. Cook, 810 F.2d 188, 192 (8th Cir.1987)).
We conclude that reasonable suspicion was the appropriate standard by which to assess the legality of the search *569 by Deputy Mantzanas because the investigation was initiated by Ms. Andress, the assistant principal, and she enlisted Deputy Mantzanas’s assistance. Accordingly, we reverse the order of suppression and remand for proceedings consistent with this opinion.
We recognize that our holding in this case is arguably in conflict with A.J.M. v. State, 617 So.2d 1137 (Fla. 1st DCA 1993). In that case, the school principal received information that certain students were in possession of drugs. He initiated an investigation and asked the school resource officer to search the students. The First District held that the appropriate standard for assessing the search by the school resource officer was probable cause. However, the court pointed out that the' State chose to present no evidence from the principal regarding his basis for searching the students. Conseqúently, the First District concluded that it was impossible to determine whether reasonable suspicion or probable cause existed. The present case is distinguishable because evidence was presented that shows there was a reasonable suspicion for the search of N.G.B. Nevertheless, because the First District stated that the test for determining the validity of the search by the school resource officer was probable cause, we cite conflict with A.J.M.[3]
Reversed and remanded.
CASANUEVA and SALCINES, JJ., Concur.

. Deputy Mantzanas stated that the baggie found on the floor was a zip locked baggie about one inch by three quarters of an inch.

. School resource officers are certified law enforcement officers whose powers and duties as law enforcement officers continue throughout their terms as school resource officers. § 230.2318(2)(a), Fla. Stat. (2001). They must abide by school board policies and consult and coordinate their activities through the school principal, although they are responsible to their law enforcement agencies in all matters relating to employment. § 230.2318(2)(b).

. We note that the Third District has held that M.J. v. State, 399 So.2d 996 (Fla. 1st DCA 1981), the case upon which the First District relied in A.J.M. v. State, 617 So.2d 1137 (Fla. 1st DCA 1993), does not correctly state the law. State v. D.S., 685 So.2d 41 (Fla. 3d DCA 1996).