FULMER, Judge,
Dissenting.
I respectfully dissent. I would reverse the adjudication because the State failed to show that the warrantless search of I.R.C.’s backpack was consensual or was justified by another valid exception to the warrant requirement.
On November 22, 2005, counsel for I.R.C. appeared before the court for a hearing on I.R.C.’s motion to disclose the identity of a confidential informant (Cl). Defense counsel informed the court that he intended to file a motion to suppress and that he wanted to obtain the identity of the informant because the officer based his search of I.R.C. on probable cause stemming from the Cl’s tip. The prosecutor informed the court that a tip was given at school and that consent was given by *590 I.R.C. for a search of his book bag. The court concluded that because the State was proceeding on a consent search, the fact of the Cl’s tip would not be relevant to the suppression issue. Therefore, ■ the court denied the defense motion to disclose the CL
On November 30, 2005, the parties appeared before the court for the hearing on I.R.C.’s motion to suppress. The State’s only witness was Deputy Kranitz with the Polk County Sheriffs Office. The deputy worked in' the school resource unit at George Jenkins High School. The deputy began to testify about information he received with respect to I.R.C. Defense counsel objected, citing the prior hearing and the State’s representation that it was proceeding on a consent search. The prosecutor responded, “That’s fine.” Thus, the. State did not elicit from the deputy the substance of the CDs tip relating to I.R.C.
The deputy then testified that he responded to a portable classroom. He went inside, and “I asked I.R.C. if he wouldn’t mind grabbing his things and step outside with me.” I.R.C. complied. The deputy explained to I.R.C. that he had information that I.R.C. was in possession of cannabis.[1] The deputy testified: “I felt it important to explain to. [I.R.C.] why I removed him from his classroom. At that point I asked [I.R.C.] for consent to search his bag and his person for illegal drugs. He handed me his bag and consented to the search.” When asked how I.R.C. consented, the deputy testified: “I asked him, he handed me the bag, he said go ahead. He put his arms out as if to search his person. I had his bag first so I searched his bag.” On cross-examination, the deputy acknowledged that the incident occurred during the regular school day and that he did not inform I.R.C. that he was free to refuse to consent. The deputy also acknowledged that when he removed I.R.C. from the classroom, he did not give I.R.C. the option to refuse. When asked if I.R.C. would have been punished if he had left the school that day, the deputy stated, “I don’t take part in any school discipline ma’am, I don’t know.”
The defense presented the testimony of I.R.C., who testified that he did not feel like he had a choice to refuse consent. When asked, “What do you believe would have happened had you not consented?”, he responded, “I would have been pinned to the ground and my bag would have been searched anyways.”
The defense argued that based on the totality of the circumstances the State failed to meet its burden of showing that the consent was freely and voluntarily given:
[Defense counsel]: Your Honor, the State has failed to meet its burden showing that the consent that [I.R.C.] supposedly gave [the deputy] to search his bag was voluntary. The officer testified that he removed him from his classroom. He did not inform him he was free to refuse to consent. He did not inform him he was free to leave. In fact it was during the normal school day and he could not have left without serious consequences for leaving school. He was — -there is no testimony that the voluntary was consensual [sic]. It was not voluntary. It was not knowing. He acquiesce[d] to authority. He — [I.R.C.] ■testified that he believed that had he refused he would have been arrested and searched anyway.
*591 I submit to the court that under the totality of the circumstances the State has failed to meet its burden. That the consent supposedly given by [I.R.C.] was freely and voluntarily and knowingly given. And that it was a mere acquiescence] to authority. And we would ask the court to grant our Motion to Suppress.
I conclude that the trial court erred in rejecting this argument.
The deputy admitted on cross-examination that he removed I.R.C. from his classroom and did not give him the option to refuse to go with the deputy. There is no testimony in the record establishing that the deputy had probable cause or reasonable suspicion to detain I.R.C.[2] As previously explained, the State elected to not disclose the Cl and the basis upon which 1.R.C. was seized from his classroom. If the deputy had encountered I.R.C. in a common area during a time when students were changing classes, the encounter would have been deemed consensual because I.R.C. would have had the right to walk away. However, by removing I.R.C. from a classroom, the deputy exercised his legal authority over I.R.C. in such a way that constituted a seizure.
Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity. State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). This Court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Jacobson v. State, 476 So.2d 1282 (Fla. 1985). Whether characterized as a request or an order, we conclude that Deputy Wilmoth’s direction for Popple to exit his vehicle constituted a show of authority which restrained Popple’s freedom of movement because a reasonable person under the circumstances would believe that he should comply. See Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990).
Popple v. State, 626 So.2d 185, 187-88 (Fla.1993) (footnote omitted).
Because I.R.C. was seized without a showing of justification, any consent to search that followed was tainted. “Consent given after police conduct determined to be illegal is presumptively tainted and deemed involuntary, unless the state proves by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint.” Delorenzo v. State, 921 So.2d 873, 879 (Fla. 4th DCA 2006) (citing Scott v. State, 696 *592 So.2d 1335, 1336 (Fla. 4th DCA 1997); Faulkner v. State, 834 So.2d 400, 403 (Fla. 2d DCA 2003)). The State did not prove a break in events from the time Deputy Kranitz removed I.R.C. from his classroom until the deputy asked him if he could search him. With no break in the events, any consent given remained tainted and cannot vitiate the illegality.
The majority deems the seizure of I.R.C. from the classroom as irrelevant to the issue of whether the consent was voluntary, stating, “There is ... no doubt that the lawfulness of I.R.C.’s detention is not at issue in this case.” The majority reaches this conclusion by reasoning that the lawfulness of the detention was not specifically raised as an issue on appeal.
This reasoning is faulty because it fails to recognize that the issue of whether I.R.C. gave a voluntary consent to search requires an examination of the totality of the circumstances and one of the relevant circumstances which must be considered was how I.R.C. came to be in the presence of Deputy Kranitz. Only by ignoring the seizure of I.R.C. from the classroom is the majority able to declare, “There is no hint of coercion.” The majority thus overlooks a key circumstance bearing on the only issue before this court, whether the alleged consent given by I.R.C. was voluntary.
It was the State’s burden to demonstrate that the seizure of I.R.C. from his classroom was justified. However, when the State elicited testimony from the deputy concerning the information he received with respect to I.R.C., the defense objected based on the State’s prior objection to disclosing the Cl and the trial court’s denial of the defendant’s motion to disclose the Cl. The State responded to defense counsel’s objection by simply stating, “That’s fine.” Because the State elected to not rely on the confidential tip as a justification for the deputy’s actions, it was unable to meet its burden.
I would therefore conclude that the State did not carry its burden of showing voluntary consent and would reverse the trial court’s order denying the motion to suppress.

. The trial court overruled an objection to this testimony, stating: "I would overrule because he’s merely telling him what information he received and why he was talking to him. I understand that’s not a basis to support a search.”

. The record indicates that the deputy was employed by the sheriff's office and he was not involved with school disciplinary matters. See State v. D.S., 685 So.2d 41 (Fla. 3d DCA 1996) (discussing distinction between school police officers employed by the district school board and outside police officers who are employed by a county governmental entity unrelated to the school district). Because the deputy acted alone without any involvement of school officials, the probable cause standard applies rather than the reduced reasonable suspicion standard, which governs searches conducted by school officials. Cf. State v. N.G.B., 806 So.2d 567, 568-69 (Fla. 2d DCA 2002) (concluding that reasonable suspicion was appropriate legal standard by which to assess legality of search by deputy because the investigation was initiated by assistant principle who enlisted the deputy's assistance); State v. Whorley, 720 So.2d 282, 283 (Fla. 2d DCA 1998) (observing that school resource officer who participated in search conducted by assistant principal needed only reasonable suspicion to justify search).