567 So.2d 1007 (1990)
Ivan AGUILA, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-199.
District Court of Appeal of Florida, Third District.
October 9, 1990.
Rehearing Denied November 2, 1990.
Bennett H. Brummer, Public Defender, and Robert Kalter, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Patricia Ann Ash, Asst. Atty. Gen., for appellee.
Before HUBBART, NESBITT and GERSTEN, JJ.
*1008 PER CURIAM.
Aguila appeals his conviction and sentence for grand theft. We reverse.
An officer observed Ivan Aguila and his passengers driving through the parking lot of Robbie's Boat Rentals and an adjacent seafood place at 4 A.M., using only the automobile's parking lights. The car pulled out to the adjoining major roadway directly adjacent to a bridge where bridge fishermen sometimes fished in the early morning hours. The headlights were turned on as the auto reached the road.
Based solely upon this observation, the officer stopped the vehicle. The officer was neither responding to a BOLO nor acting upon an observation indicating the possibility of criminal activity. Only subsequent to this stop did backup police inform the officer that Robbie's had been burglarized. The officer then searched Aguila's vehicle and retrieved two large bags full of cigarette packages. Aguila and his passengers were arrested. Subsequently, the trial court denied Aguila's motion to suppress the physical evidence and Aguila was convicted of grand theft.
At trial, the arresting officer virtually admitted that he had no founded suspicion of criminal activity. When asked: "Why did you want to investigate further, did you have a hunch that there was some crime  [?]," the officer responded: "Not a specific hunch but I wanted to  I wanted to see who they were and, what they were doing there." In the instant case, the factors known to the officer at the time of the stop did not reach the level of a "well-founded suspicion" justifying further investigation to determine whether the auto's occupants had committed, were committing, or were about to commit a crime. The vehicle when spotted was closer to the seafood shack than to Robbie's. Early morning fishing activity is not unusual. Considering the location of the vehicle and the early morning activity, not uncommon to the area, we conclude the stop in the instant case was illegal. See Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989) (observation of individual in high crime area held insufficient to justify investigatory stop); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989) (bare suspicion of criminal activity is insufficient to justify investigatory stop). Abraham v. State, 532 So.2d 91 (Fla. 4th DCA 1988); McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986). See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Further, the cigarette packages found in Aguila's car, as fruit of the illegal stop, should have been suppressed by the court below. See McCloud, 491 So.2d at 1167; see also Earman v. State, 265 So.2d 695 (Fla. 1972).
Accordingly, the order denying the motion to suppress is reversed and the cause is remanded with directions to vacate appellant's conviction.