IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

EDWIN AGUIAR,

       Appellant,

v.                                 Case No.  5D15-1627

STATE OF FLORIDA,

       Appellee.

_____/

Opinion filed April 1, 2016

Appeal from the Circuit Court
for Osceola County,
A. James Craner, Judge.

James S. Purdy, Public Defender, and
George D.E. Burden, Assistant Public
Defender, Daytona Beach, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Robin A. Compton,
Assistant Attorney General, Daytona
Beach, for Appellee.

EN BANC

LAWSON, C.J.

Edwin Aguiar appeals his convictions and sentences on charges of possession of

cocaine, attempted tampering with physical evidence and possession of drug

paraphernalia, to which he pled nolo contendre, reserving the right to challenge the denial

of his dispositive motion to suppress.[1]  We affirm, and write to consider whether a police officer may, as a matter of course, detain a passenger who attempts to leave the scene of a lawful traffic stop without violating the passenger's Fourth Amendment rights.  *See* Amends. IV, XIV, U.S. Const. (protecting the "right of the people to be secure in their persons . . . against unreasonable searches and seizures").  We hold that the officer can, and recede from *F.J.R. v. State*, 922 So. 2d 308 (Fla. 5th DCA 2006), which reached a contrary conclusion relying upon *Wilson v. State*, 734 So. 2d 1107 (Fla. 4th DCA 1999), *certiorari denied*, 529 U.S. 1124 (2000).  We also certify conflict with *Wilson v. State*, and with several other Florida district court opinions, to be discussed, that have followed *Wilson v. State*.[2]

I.

Aguiar was the front-seat passenger in a vehicle being stopped because a brake light was out and the driver was not wearing a seat belt.  When the driver pulled into a parking space in a restaurant parking lot, Aguiar immediately exited the passenger-side door.  The officer conducting the traffic stop ordered Aguiar back into the vehicle, and Aguiar ultimately complied—after which the officer noticed the bag of cocaine for which he was arrested.  A panel of this court initially issued an opinion reversing the convictions based upon *Wilson v. State*, which concluded that although a "traffic violation sufficiently justifies subjecting the driver to detention . . . [t]he restraint on the liberty of the blameless

---

[1] The trial court withheld adjudication and sentenced Aguiar to concurrent probationary sentences of 3 years on the felony counts and 360 days on the misdemeanor count.

[2] To avoid confusion, this opinion will refer to *Wilson v. State*, 734 So. 2d 1107 (Fla. 4th DCA 1999) by its full name, "*Wilson v. State*," and later, *Maryland v. Wilson*, 519 U.S. 408 (1997), by its full name, "*Maryland v. Wilson*."

2

passenger is, in contrast, an unreasonable interference." 734 So. 2d at 1112; *see also* *F.J.R.*, 922 So. 2d at 310 ("The courts of this state have consistently held that innocent passengers in a vehicle which is stopped for a traffic violation may choose whether to continue on with their business or return to the vehicle." (citing *Wilson*, 734 So. 2d at 1111-12)).

The State then moved for rehearing and rehearing en banc, arguing that this case presents an issue of exceptional importance and that the rule announced in *Wilson v. State* should be reconsidered in light of more recent precedent from the United States Supreme Court in *Brendlin v. California*, 551 U.S. 249 (2007) and *Arizona v. Johnson*, 555 U.S. 323 (2009).[3] We agree, and have withdrawn the original panel opinion in order to consider this issue en banc.[4]

II.

A.

We begin our discussion with *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), which held that a police officer may *as a matter of course* order the driver of a lawfully stopped

---

[3] Article 1, Section 12 of the Florida Constitution parallels the protections of the Fourth Amendment but also directs that the right of Florida citizens to be free from unreasonable searches and seizures "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."

[4] Although the rehearing rule generally prohibits a party from presenting a new argument for the first time after the appeal has been decided, *see* Fla. R. App. P. 9.330(a) ("A motion for rehearing . . . shall not present issues not previously raised in the proceeding . . . ."); *Cleveland v. State*, 887 So. 2d 362, 364 (Fla. 5th DCA 2004) ("[I]t is a rather fundamental principal of appellate practice and procedure that matters not argued in the briefs may not be raised for the first time on a motion for rehearing.") (summarizing *Ayer v. Bush*, 775 So. 2d 368 (Fla. 4th DCA 2000)), the en banc rule does not contain this limitation. *See* Fla. R. App. P. 9.331.

car to exit his or her vehicle. *Mimms* is significant, first, because it succinctly lays out the analytical framework for this legal issue. As explained in *Mimms*, "[t]he touchstone of . . . analysis under the Fourth Amendment is always 'the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security[.]'" *Id.* at 108-09 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). That reasonableness, in turn, "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* at 109 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

Second, *Mimms* is significant because it involves the same public interest concern at issue in our case: the "safety of the officer[.]" *Id.* at 110. In *Mimms*, the United States Supreme Court recognized this interest as both "legitimate and weighty," explaining:

> We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio, supra*, 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." *Id.*, at 234, n. 5, 94 S.Ct. at 476, n. 5.

4

*Id.* The Court weighed the significant interest in officer safety against the additional intrusion of requiring an already-stopped driver to exit the vehicle—an interest it classified as "*de minimus,*" and concluded: "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.* We readily agree with this conclusion.

Finally, we also view a point made in dissent as significant. As explained by Justice Stevens, the matter-of-course rule adopted by the majority in *Mimms* appeared to "abandon 'the central teaching of [the United States Supreme] Court's Fourth Amendment jurisprudence'—which has ordinarily required individualized inquiry into the particular facts justifying every police intrusion—in favor of a general rule covering countless situations." *Id.* at 116 (Stevens, J., dissenting) (quoting *Terry*, 382 U.S. at 21 n.18). We do not intend this observation as a criticism of the *Mimms* holding. To the contrary, given that the primary interest recognized by the Court was the significant risk of harm faced every time an officer makes a traffic stop, a bright line rule allowing the officer to exercise control over the driver in all cases seems eminently reasonable.

In *Maryland v. Wilson*, 519 U.S. 408 (1997), the United States Supreme Court extended "the rule of [*Mimms*], that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle . . . to passengers as well." 519 U.S. at 410. Turning to the balancing test reiterated in *Mimms*, the Court explained:

> On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. Federal Bureau of Investigation, Uniform Crime Reports: Law Enforcement Officers Killed and Assaulted 71, 33 (1994). In the case of

5

passengers, the danger of the officer's standing in the path of oncoming traffic would not be present except in the case of a passenger in the left rear seat, but the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.

On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.

*Id.* at 413-14 (footnotes omitted).

The Court citing *Michigan v. Summers*, 452 U.S. 692 (1981), analogized to the rule allowing officers to routinely exercise control over locations where search warrants are being exercised. In *Summers*, when officers arrived to execute a lawful search warrant, they immediately encountered an individual, later identified as Summers, coming down the front steps of the residence, and ordered him back inside. Although "no special danger to the police" was suggested by the evidence in that case, the Court noted that any search for narcotics could "give rise to sudden violence" and therefore justified a rule authorizing "officers [to] routinely exercise unquestioned command of the situation" in order to minimize the "risk of harm to both the police and the occupants[.]" *Id.* at 414

6

(quoting *Summers*, 452 U.S. at 702-03). After discussing *Summers*, the Court concluded its analysis:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

*Maryland v. Wilson*, 519 U.S. at 414-15 (footnote omitted).

Significantly, the reasoning in *Maryland v. Wilson* would seem to support a broad rule also allowing officers to routinely exercise command of all vehicle occupants for the reasonable duration of a traffic stop. However, no passenger in that case attempted to leave, and the Court expressly declined to address that broader issue, explaining:

> Maryland urges us to go further and hold that an officer may forcibly detain a passenger for the entire duration of the stop. But respondent was subjected to no detention based on the stopping of the car once he had left it; his arrest was based on probable cause to believe that he was guilty of possession of cocaine with intent to distribute. The question which Maryland wishes answered, therefore, is not presented by this case, and we express no opinion upon it.

*Id.* at 415, n.3.

### B.

This unanswered question from *Maryland v. Wilson* was presented to the Fourth District in *Wilson v. State*. Instead of focusing on the broader officer safety concerns relating to all traffic stops, addressed in *Maryland v. Wilson*, and to special concerns that would arise from allowing passengers to leave, the Fourth District focused on a narrower point from *Maryland v. Wilson* that once "[o]utside the car, the passengers will be denied

7

access to any possible weapon that might be concealed in the interior of the passenger compartment." *Wilson v. State*, 734 So. 2d at 1111 (quoting *Maryland v. Wilson*, 519 U.S. at 414). Focusing on this narrower issue, the Fourth District accurately pointed out that "passenger access to weapons potentially concealed inside a car, would be increased if passengers were forced back *inside* the vehicle" for safety purposes. *Wilson v. State*, 734 So. 2d at 1111. The Fourth District also noted that the Supreme Court had not discussed specific potential dangers that might arise from ordering a passenger to stay, and had expressly declined to address the issue. *Id.*

It appears to us that the Fourth District misunderstood the Supreme Court's express decision not to address their issue, and its implications for interpreting that case. The Court has, in its own words, "consistently refused to give" advanced "expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation[.]" *United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (citations omitted). In other words, the Court's careful practice is to *only* address the narrow question presented by the facts before it. The fact that the Court did not discuss any heightened dangers that could arise from allowing a passenger to walk away, uncontrolled, from the immediate scene, does not mean that those dangers do not exist. They do.

When an officer approaches any vehicle stopped for a traffic infraction, the officer needs to be on vigilant alert, ready to react to violence that could come from any occupant inside the vehicle. A departing passenger is a distraction that divides the officer's focus

8

and thereby increases the risk of harm to the officer. As that passenger moves further from the vehicle, it becomes impossible for the officer to watch the departing passenger and the remaining occupants. If the officer focuses on the potential threat from the passenger, violence could erupt from an occupant—robbing the officer of any meaningful opportunity to react. If the officer focuses instead on the occupants, the departing passenger could turn and attack. Even when the departing passenger is out of sight, the passenger could pose a risk of harm to the officer. Especially if armed, that person could easily attack from a concealed location away from the vehicle.[5] A careful officer would be cognizant of this potential threat from the moment that the departing passenger was out of sight. This distraction would increase the risk to the officer, even if the passenger did not return.

Next, the Fourth District addressed the second interest to be balanced—"the individual's right to personal security free from arbitrary interference by law officers." *Mimms*, 434 U.S. at 109. The Fourth District found that "a command preventing an innocent passenger from leaving the scene of a traffic stop to continue on his independent way is a greater intrusion upon personal liberty than an order simply directing a passenger out of the vehicle." *Wilson v. State*, 734 So. 2d at 1111-12. While we question this conclusion, even if detaining a passenger who desires to leave is more burdensome than directing a stopped passenger to step out of the vehicle, the infringement is minimal in

---

[5] As explained again in *Johnson*, "the risk of a violent encounter in a traffic-stop setting 'stems . . . from the fact that evidence of a more serious crime might be uncovered during the stop.'" 555 U.S. at 331 (quoting *Maryland v. Wilson*, 519 U.S. at 414). A passenger who leaves out of fear that evidence of a more serious crime might be discovered could surely realize that he has left evidence linking him to that crime in the vehicle—either physical evidence or a witness who can identify him. Then, a passenger whose initial response was flight could turn to a response of fight.

9

light of the fact that: (1) the passenger's planned mode of travel has already been lawfully interrupted; (2) the passenger has already been "stopped" due to the driver's lawful detention; and (3) routine traffic stops are brief in duration.

Balancing the public interest (as viewed through the lens of *Maryland v. Wilson*, which was focused on a different question), the Fourth District concluded that generalized officer safety concerns could not justify further detention of "innocent passengers" in all cases. Consequently, the Fourth District held that "[a] wholly innocent passenger should have the right to choose whether to continue on with his business or return to the vehicle and remain by his driver-companion's side." *Id.* at 1112. We disagree with this conclusion. Because the legitimate and weighty concern of officer safety can only be addressed "if the officers routinely exercise unquestioned command of the situation[,]" *Maryland v. Wilson*, 519 U.S. at 414 (quoting *Summers*, 452 U.S. at 703), we believe that this interest outweighs the minimal intrusion on those few passengers who might prefer to leave the scene.

However, since *Wilson v. State*, it appears that neither Florida courts nor the State of Florida have questioned its holding, until now. *See J.R.P. v. State*, 942 So. 2d 452, 454 (Fla. 2d DCA 2006) (reversing passenger's delinquency adjudication based on *Wilson v. State*); *Fricano v. State*, 939 So. 2d 324 (Fla. 4th DCA 2006) (expressly applying *Wilson v. State* and reversing conviction of taxi cab passenger who was detained after traffic stop of cab); *F.J.R.,* 922 So. 2d at 310-11 (recognizing *Wilson v. State* as accurately reflecting settled Florida law and reversing conviction where the officer ordered passenger attempting to leave scene to stop despite lack of any articulated, particularized safety concern justifying detention); *State v. McClendon*, 845 So. 2d 233 (Fla. 4th DCA

10

2003) (applying *Wilson v. State* but reversing suppression order where defendant/passenger made no attempt to leave the scene of the traffic stop and where the officer expressed particularized safety concerns which reasonably justified ordering the passenger back into the vehicle in that case); *Faulkner v. State*, 834 So. 2d 400 (Fla. 2d DCA 2003) (reversing conviction of detained "innocent passenger" based upon rule announced in *Wilson v. State*); *Barrios v. State*, 807 So. 2d 814 (Fla. 4th DCA 2002) (applying *Wilson v. State* and reversing "innocent passenger's" convictions on theory that officer had no lawful authority to detain the passenger at the scene of the stop, so that the arrest for resisting the officer's command to stay was improper and any evidence of crimes found in search incident to arrest for resisting should have been suppressed).

There is no need to discuss these Florida cases in detail because all simply followed *Wilson v. State* and none added anything to the Fourth District's analysis. As such, we simply note that our conclusion that *Wilson v. State* was incorrectly decided necessarily brings us in conflict with these other cases as well—with the exception of *Fricano*. As already mentioned, *Fricano* involved the detention of a taxi cab passenger. The cab had been stopped for running a stop sign. Because a passenger in a private vehicle will almost always have a more significant relationship to both the stopped vehicle and its driver than a taxi cab passenger, that case may present different considerations than our case. And, because that case is not before us, we express no opinion on it. For that reason, we do not view this case as presenting a direct conflict with *Fricano*.

With respect to the conflict cases, we also agree with the State that these Florida cases cannot be reconciled with *Brendlin* and *Johnson*. We address those cases now.

11

C.

In *Brendlin*, the Supreme Court considered whether a vehicle passenger has standing under the Fourth Amendment to challenge the constitutionality of a traffic stop, and held "that a passenger is seized as well [as the driver] and so may challenge the constitutionality of the stop." 551 U.S. at 252.[6] The Appellant in that case had made no attempt to leave the scene of the stop. Because Brendlin's submission to the show of governmental authority took "the form of passive acquiescence" and the officer did not show "an unambiguous intent" to detain Brendlin by stopping the driver, the Court turned to a test devised in *United States v. Mendenhall*, 446 U.S. 544 (1980), and *Florida v. Bostick*, 501 U.S. 429 (1991), for determining "when a seizure occurs in response to authority, and when it does not" in similar circumstances. *Brendlin*, 551 U.S. at 255. That test is whether "a reasonable person would feel free to decline the officers' requests or [to] otherwise terminate the encounter[.]" *Id.* (citations and quotations omitted). The Court unanimously concluded that during a traffic stop "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." *Id.* at 257. The unanimous Court elaborated on its conclusion, as follows:

> An officer who orders one particular car to pull over acts with an implicit claim of right based on fault of some sort, and a sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing. If the likely wrongdoing is not the driving, the passenger will reasonably

---

[6] The Court also noted that "although [it had] not, until today, squarely answered the question [of] whether a passenger is also seized, [the Court had] said over and over in dicta that during a traffic stop an officer seizes everyone in the vehicle, not just the driver." 551 U.S. at 255-56 (citations omitted).

12

> feel subject to suspicion owing to close association; but even
> when the wrongdoing is only bad driving, the passenger will
> expect to be subject to some scrutiny, and his attempt to leave
> the scene would be so obviously likely to prompt an objection
> from the officer that no passenger would feel free to leave in
> the first place.

*Id.* (citation omitted).

While *Brendlin* did not involve a passenger who attempted to leave the scene, there is a compelling link between the reasonableness finding in *Brendlin* and the reasonableness inquiry in our case. Put simply, the United States Supreme Court's unanimous conclusion that "any reasonable passenger" would "obviously" expect police to detain him or her for the duration of a traffic stop compels a conclusion that it was reasonable for the officer to do so.

Also significant is the *Brendlin* court's discussion of *Maryland v. Wilson*. The Court, citing *Maryland v. Wilson*, concluded, "[I]t is also reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Id.* at 258. The Court explained that in fashioning the rule in *Maryland v. Wilson*, it had observed that "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* (citations and quotations omitted). The Court concluded that the "societal expectation of unquestioned police command" would be "at odds with any notion that a passenger would feel free to leave, or to terminate the personal encounter any other way, without advance permission." *Id.* (citations and quotations omitted). This discussion reinforces the notions that: (1) the public interest concern of officer safety (at issue in our case) is best addressed by a blanket rule that allows the

13

officer to always exercise command of the scene during a traffic stop; and (2) an officer cannot exercise unquestioned command of the scene unless he or she can direct the movements of a passenger—even when the passenger wants to walk away.

Finally, *Brendlin* calls into question the rhetoric used by Florida's appellate courts when addressing this issue, specifically, our use of the term "innocent passenger" to describe the passenger in a vehicle which is initially stopped based solely upon a traffic infraction or other driver wrongdoing. The Court pointed out that "police may also stop a car solely to investigate a passenger's conduct[,]" and that "a passenger cannot assume, merely from the fact of a traffic stop, that the driver's conduct is the cause of the stop." *Id.* at 257 n.3 (citations omitted). The point here is that if a passenger cannot assume his or her "innocence" at the time of a stop, a legal rule treating the passenger as "innocent" is fraught with problems—because the rule tells passengers they are free to leave when they may not be, and when they have no way of knowing with certainty whether an attempt to leave could result in a lawful arrest and prosecution for the crime of resisting an officer without violence.

In *Johnson*, a unanimous Court addressed another passenger issue involving a traffic stop (and a passenger who did not attempt to leave the scene). Three officers pulled over a vehicle "after a license plate check revealed that the vehicle's registration had been suspended for an insurance-related violation." 555 U.S. at 327. "Under Arizona law, the violation for which the vehicle was stopped constituted a civil infraction warranting a citation." *Id.* An officer requested that Johnson, a passenger wearing clothing "consistent with [gang] membership[,]" exit the vehicle as authorized by *Maryland v. Wilson. Id.* at 328. The officer reasonably suspected that Johnson might be armed and

14

dangerous, conducted a patdown of his person, and discovered a weapon. The ultimate issue in *Johnson* was whether the Fourth Amendment permitted an officer to pat down a passenger for weapons without first having any basis to suspect the passenger of any recent or imminent criminal activity.

The Court first explained that under *Terry*:

> [a] frisk (patdown for weapons) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures . . . . if two conditions are met. First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Id.* at 326-27. Because the record demonstrated a reasonable basis for the officer to suspect that Johnson was armed and dangerous, the Court's focus was on the first *Terry* requirement—that the passenger be lawfully stopped (detained). Not surprisingly, the unanimous Court addressed the issue as a logical complement to its holding in *Brendlin*, explaining:

> For the duration of a traffic stop, we recently confirmed, a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers. [citing *Brendlin*, 551 U.S. at 255]. Accordingly, we hold that, in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity.

*Id.* at 327. But, the Court did not stop there. Instead, it explained in detail why it viewed the detention of the passenger as reasonable under the Fourth Amendment.

15

The Court first explained that most traffic stops are brief, such that they "resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*." *Id.* at 330 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). Furthermore, because "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle . . . the additional intrusion on the passenger is minimal." *Id.* at 332 (quoting *Maryland v. Wilson*, 519 U.S. at 413-15). Against this "minimal" intrusion on personal liberty, the Court once again balanced the "legitimate and weighty interest in officer safety," *id.* at 331 (internal citation and quotation omitted), explaining:

> [T]raffic stops are especially fraught with danger to police officers. The risk of harm to both the police and the occupants of a stopped vehicle is minimized, we have stressed, if the officers routinely exercise unquestioned command of the situation . . . .
>
> . . . .
>
> . . . [And,] the same weighty interest in officer safety . . . is present regardless of whether the occupant of the stopped car is a driver or passenger.
>
> . . . .
>
> . . . [This is because] the risk of a violent encounter in a traffic-stop setting stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop . . . . [and that the] motivation of a passenger to employ violence to prevent apprehension of such a crime . . . is every bit as great as that of the driver.

*Id.* at 330-32 (internal citations and quotations omitted). Weighing these interests, the Court found the "stop" of the passenger to be reasonable, and concluded that: "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Id.* at 333. The Court also reiterated that, "as

stated in *Brendlin*, a traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will." *Id.*

To us, the import of *Brendlin* and *Johnson* is clear. The United States Supreme Court has held that all occupants of a stopped vehicle are reasonably seized for the duration of a traffic stop. This necessarily means that the passenger "is not free to terminate the encounter[.]" *Id.* at 333.

D.

In conclusion, we hold that the officer did not violate Aguiar's Fourth Amendment rights by ordering him back into the vehicle. We recede from *F.J.R.* and certify conflict with *Wilson*, *J.R.P.*, *McClendon*, *Faulkner*, and *Barrios*.

AFFIRMED; CONFLICT CERTIFIED.

SAWAYA, PALMER, ORFINGER, TORPY, EVANDER, COHEN, BERGER, WALLIS, LAMBERT and EDWARDS, JJ., concur.