**Gregory PRESLEY, Appellant,**

v.

**STATE of Florida, Appellee.**

**No. 1D15–4891.**

District Court of Appeal of Florida, First District.

Nov. 9, 2016.

Nancy A. Daniels, Public Defender, and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Samuel B. Steinberg, Assistant Attorney General, Tallahassee, for Appellee.

*ON MOTION FOR CLARIFICATION*

WOLF, J.

Appellant's motion for clarification is granted. We withdraw our prior opinion and substitute the following opinion. Appellant challenges the trial court's order revoking his probation. His main argument on appeal is that the trial court erred in denying his motion to suppress evidence obtained during a traffic stop in which appellant was a passenger in the vehicle. Appellant argues the officer violated his Fourth Amendment rights by requiring him to stay at the scene of the traffic stop because the officer lacked reasonable suspicion that appellant was engaged in criminal activity. We agree with the reasoning of the en banc opinion of the Fifth District Court of Appeal in *Aguiar v. State*, 199 So.3d 920 (Fla. 5th DCA 2016), *rev. denied* No. SC16–633, 2016 WL 3459769 (Fla. June 24, 2016), which held concerns for police officers' safety during a traffic stop outweigh the limited intrusion on passengers' rights by requiring them to remain at the scene for the reasonable duration of the traffic stop. Thus, we hold that an

officer may, as a matter of course, detain a passenger during a lawful traffic stop without violating the passenger's Fourth Amendment rights. We, therefore, affirm.

## I. *Facts*

Several officers testified that they conducted a traffic stop in a high-crime area in the early morning hours. Neither the legitimacy of the traffic stop nor its duration are being challenged in this case. Officer Pandak responded to the scene to provide backup because "someone had left the car and ... there was a struggle of some sort." When the officer arrived, the driver and appellant, who was a passenger, were standing beside the car. The second passenger was in handcuffs and was being belligerent. The officer told appellant not to leave the scene and had a conversation with him.

"Very soon" into the conversation, the officer asked appellant his name, and appellant gave it to him. Appellant also volunteered his date of birth. The officer then asked appellant general questions, including questions about the passenger who had been detained and from where they were all coming. Appellant stated they were coming from his aunt's house, and he stated that he had been consuming alcohol.

Officer Pandak ran appellant's name through the system and learned that appellant was on probation and that a condition of the probation was that appellant not drink alcohol. Appellant had already admitted that he had been drinking, so Officer Pandak arrested appellant, although appellant resisted. Upon search incident to arrest, the officer found cocaine on appellant's person.

On cross-examination, the officer testified that when he approached the vehicle, he was "suspicious" that there was criminal activity associated with that vehicle due to the fact that one of the passengers had fled and had been detained. He stated, "based on the circumstances, somebody left the vehicle, we are in a high-crime, high-drug area.... [T]here were two officers dealing with someone who was being belligerent, and there was one officer with [appellant], which was me, one officer with the other person; at that point, it wasn't a safe situation. So I wasn't comfortable with letting someone leave the scene of a possible crime worrying maybe about my safety or the destruction of possible evidence." He continued that "[v]ery often times, any crime that's committed within a vehicle does not go ... unnoticed by other people in the vehicle. So it's very reasonable to believe that if someone was committing a crime in a vehicle and trying maybe to get away from it, that everyone else in the vehicle is likely aware of it. So yes, I believe [appellant] was associated somehow with whatever crime that the other person might have been committing." Although he did not know what crime had been committed by the other occupant of the vehicle, Officer Pandak testified that the other man had been handcuffed, which told him that a crime was involved. He also testified that there were "numerous other people walking around" the scene, which was in a high-crime area, and it was a matter of "officer safety ... for me to feel comfortable with this person leaving a potential crime scene in getting away with something, and/or destroying evidence, or coming back to harm me and my fellow officers."

After the hearing, the trial court determined that there had been an investigative detention, but it was lawful because the officer had reasonable suspicion of criminal activity.

## II. *Analysis*

■■■ " 'The ruling of the trial court on a motion to suppress comes to us clothed with a presumption of correctness and we

must interpret the evidence and reasonable inference and deductions in a manner most favorable to sustaining the trial court's ruling.'" *Johnson v. State,* 608 So.2d 4, 9 (Fla.1992) (quoting *Owen v. State,* 560 So.2d 207, 211 (Fla.1990)). A ruling on a motion to suppress is a mixed question of law and fact, and there are two appropriate standards of review. *Majors v. State,* 70 So.3d 655, 659 (Fla. 1st DCA 2011). The standard of review for the trial court's factual findings is whether they are supported by competent, substantial evidence. To the contrary, a de novo standard of review is applied to findings of law. *Id.* "This Court is bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions." *State v. Butler,* 655 So.2d 1123, 1125 (Fla.1995) (citing Art. I, § 12, Fla. Const.).

The State asks this court to adopt the reasoning of a recent Fifth District Court of Appeal case, *Aguiar,* 199 So.3d 920, in which the Fifth District went en banc and determined that an officer may detain a passenger for the duration of a traffic stop as a matter of course without requiring an articulable suspicion of criminal activity or fear for officer safety. *Aguiar* concluded that prior precedent to the contrary should be receded from because (1) the reasoning of the contrary precedent was flawed because it failed to properly balance the minor infringement on the passenger's liberty with the great importance of officer safety; and (2) the contrary Florida precedent could not be reconciled with two recent United States Supreme Court cases that held that a passenger is effectively seized for the duration of the traffic stop. *Id.*

### A. *Florida Precedent*

First, the *Aguiar* court found that previous Florida cases failed to sufficiently weigh the importance of officer safety. *Id.* In *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that officers conducting a traffic stop could ask the driver to step out of the car as a matter of course, even if the officer did not have a specific concern for officer safety. The court noted that officers may be safer with the driver out of the car so that any weapons contained therein could not be accessed. The court balanced the officer's need for safety with the intrusion into the driver's personal liberty and concluded that "this additional intrusion can only be described as *de minimis.* The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it." *Id.* "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.*

Subsequently, in *Maryland v. Wilson,* 519 U.S. 408, 413–14, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), the United States Supreme Court held that officers may also ask a passenger to step out of the vehicle during a traffic stop as a matter of course. In balancing the officer's safety with the personal liberty of the passenger, the court concluded that "the case for the passengers is in one sense stronger than that for the driver" because the car is being stopped due to a traffic violation by the driver, not the passenger. *Id.* However, "as a practical matter," the court concluded that "the passengers are already stopped by virtue of the stop of the vehi-

cle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car." *Id.* at 414, 117 S.Ct. 882. Thus, the court concluded that the "additional intrusion on the passenger is minimal." *Id.* at 415, 117 S.Ct. 882. The court expressly declined to consider the issue of whether the officer could detain a passenger for the entire duration of the stop. *Id.* at 415 n. 3, 117 S.Ct. 882.

The first Florida court to address the issue of whether a passenger could be detained for the duration of a traffic stop was the Fourth District Court of Appeal in *Wilson v. State,* 734 So.2d 1107, 1111 (Fla. 4th DCA 1999). Employing the rationale of *Maryland v. Wilson,* the Fourth District held that "a command preventing an innocent passenger from leaving the scene of a traffic stop to continue on his independent way is a greater intrusion upon personal liberty than an order simply directing a passenger out of the vehicle. Such an arbitrary interference with the freedom of movement of one who is not suspected of any illegal activity whatsoever cannot be classified as a *de minimis* intrusion." *Id.* at 1111–1112.

The *Aguiar* court concluded that the *Wilson v. State* court's analysis was flawed because its balancing test did not give sufficient deference to officer safety. 199 So.3d at 923. The *Wilson v. State* court noted that the officer could be in danger if the passenger remained inside the car, where the passenger may have access to weapons. 734 So.2d at 1111. The *Aguiar* court found that another safety factor to be considered was the risk that the passenger could pose to the officer if the passenger walked away and then returned to attack the officer, possibly from a concealed location, while the officer's attention was focused on the driver. *Aguiar,* 199

So.3d at 925–26. The *Aguiar* court also disagreed with the *Wilson v. State* court's conclusion that detaining a passenger for the duration of the traffic stop was more than a de minimis intrusion, reasoning:

> [E]ven if detaining a passenger who desires to leave is more burdensome than directing a stopped passenger to step out of the vehicle, the infringement is minimal in light of the fact that: (1) the passenger's planned mode of travel has already been lawfully interrupted; (2) the passenger has already been "stopped" due to the driver's lawful detention; and (3) routine traffic stops are brief in duration.... Because the legitimate and weighty concern of officer safety can only be addressed "*if the officers routinely exercise unquestioned command of the situation* [,]" we believe that this interest outweighs the minimal intrusion on those few passengers who might prefer to leave the scene.

*Id.* (quoting *Maryland v. Wilson,* 519 U.S. at 414, 117 S.Ct. 882) (emphasis added).

### B. *Supreme Court of The United States Precedent*

Second, the *Aguiar* court reasoned that two more recent United States Supreme Court cases supported the conclusion that a passenger could be held for the duration of a traffic stop. *Id.* at 927–30, 41 Fla. L. Weekly at D822–24. In *Brendlin v. California,* 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), the Supreme Court concluded that a passenger had standing to bring a Fourth Amendment challenge to the constitutionality of a traffic stop because "a passenger is seized as well [as the driver]." The *Brendlin* court applied the standard test for determining whether one has been seized for Fourth Amendment purposes—whether a reasonable person would feel free to decline the officer's requests or terminate the encounter—and concluded that a passenger would not feel free to do so. *Id.* at 254–57, 127

S.Ct. 2400. The court in *Brendlin* reasoned that even where the traffic stop is conducted merely due to bad driving, "the passenger will expect to be subject to some scrutiny, and his attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place." *Id.* at 257, 127 S.Ct. 2400. The *Aguiar* court agreed. 199 So.3d at 928.

Similarly, in *Arizona v. Johnson*, 555 U.S. 323, 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), the United States Supreme Court held that a passenger in a traffic stop was seized for purposes of a *Terry* pat-down. *Johnson* noted that a lawful *Terry* pat-down requires two conditions be met: first, that the person is lawfully detained (usually because the officer reasonably suspects the person is committing or has committed a criminal offense), and second, the officer reasonably suspects that the person is armed and dangerous. *Johnson*, 555 U.S. at 326–27, 129 S.Ct. 781. Relying on *Brendlin*, the *Johnson* court found "*[f]or the duration of a traffic stop* ... a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Johnson*, 555 U.S. at 327, 129 S.Ct. 781 (quoting *Brendlin*, 551 U.S. at 255, 127 S.Ct. 2400) (emphasis added). As such, the court in *Johnson* found that a passenger in a car is lawfully detained, meeting the first prong of the *Terry* pat-down test, and "[t]he police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Id.* at 327, 129 S.Ct. 781.

The *Johnson* court rejected the trial court's conclusion that the lawful seizure of a passenger ends when the officer begins to question the passenger "on a matter unrelated to the traffic stop." *Id.* at 332, 129 S.Ct. 781. Instead, the Supreme Court explained:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the *duration of the stop.* Normally, the stop ends when the police have no further need to control the scene, and inform the driver and *passengers they are free to leave.* An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the stop's duration.

*Id.* at 333, 129 S.Ct. 781 (emphasis added) (internal citation omitted).

Relying on *Brendlin* and *Johnson*, the Fifth District in *Aguiar* concluded that an officer may, as a matter of course, detain a passenger during a lawful traffic stop without violating the passenger's Fourth Amendment rights. 199 So.3d at 930, 41 Fla. L. Weekly at D824. We concur fully with the well-reasoned opinion of the unanimous en banc court in *Aguiar*.[*] We also, as the Fifth District did in *Aguiar*, certify conflict with the case of *Wilson v. State*, 734 So.2d 1107 (Fla. 4th DCA 1999), *cert. denied*, 529 U.S. 1124, 120 S.Ct. 1996, 146 L.Ed.2d 820 (2000), and its progeny.

AFFIRMED.

B.L. THOMAS and OSTERHAUS, JJ., concur.

---

[*] While certain dicta in this court's case of *State v. Y.B.*, 659 So.2d 323 (Fla. 1st DCA 1994), can be argued to be in conflict with the Fifth District Court of Appeal's decision in *Aguiar v. State*, 199 So.3d 920 (Fla. 5th DCA 2016), the holding is not. The holding in that case upheld the seizure of contraband based on a permissible police-citizen encounter.