PARIENTE, J., concurring. ' This Court is bound by the precedent of the United States Supreme Court when interpreting the Fourth Amendment to the United States Constitution. See art. I, § 12, Fla. Const. Consistent with that precedent, the majority is correct that “as a matter of course, law enforcement officers may detain a vehicle’s passengers for the reasonable duration of a traffic stop without violating the Fourth Amendment.” Majority op. at 107. In this case, the defendant does not challenge the reasonableness of the duration of the traffic stop, and I agree with the majority that “under the specific facts of this case,” the stop was reasonable when “it was prolonged not by law enforcement, but by the fact that one of the passengers” was belligerent and had to be secured. Majority op. at 107. I also fully appreciate that officer safety is a reason the United States Supreme Court has concluded “that the Fourth Amendment permits law enforcement officers to order passengers out of a vehicle.” Majority op. at 101. However, when the traffic stop does not give rise to a need to question passengers or ask for their identification, I fail to comprehend why the interrogation of passengers on matters unrelated to the traffic stop, “so long as those inquiries do not measurably extend the duration of the stop,” does not intrude on the constitutional guarantee to be free from unreasonable searches and seizures. Arizona v. Johnson, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). In this case, similar to the conflict case, Aguiar v. State, 199 So.3d 920 (Fla. 5th DCA 2016), the traffic stop was for a faulty taillight and running a stop sign. See id. at 922 (explaining that the defendant “was the front-seat passenger in a vehicle being stopped because a brake light was out and the driver was not wearing a seat belt”). Presley, who is black, was a passenger in a car driven in the early morning hours in a neighborhood in Gainesville, Florida, that one of the responding police officers described as a “high-crime, high-drug area.” One of the other passengers in the car lived in a house in the neighborhood. The stop was certainly justifiable based on the traffic violations, but there was no reasonable suspicion to otherwise justify the continued interrogation. Yet, the officer attempted to justify the detention of the passengers of the stopped car based on the following: [T]he totality of circumstances ... late at night, one person already left the— left the car, which was suspicious in and of itself, high-crime, high-drug area, numerous other people walking around, officer safety ... for me to feel comfortable with this person leaving a potential crime scene and getting away with something, and/or destroying evidence, or coming back to harm me and my fellow officers. So yes, he was not free to leave.' Because under the Fourth Amendment it does not matter whether the traffic stop was pretextual, see Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), I fear that Johnson and other recent Fourth Amendment decisions of the United States Supreme Court, which condone the detention and questioning of passengers for reasons entirely unrelated to the traffic stop so long as the questioning occurs under the auspices of a “reasonably” long traffic stop, will lead to the erosion of the guarantees afforded by the Fourth Amendment to those citizens who visit and live in neighborhoods some may describe as “high-crime,” or otherwise suspicious. See majority op. at 108-09 (discussing Johnson, Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), and Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)). Indeed, as this case and Aguiar demonstrate, passengers need be wary of the risk of detention when choosing whether to ride in a car. with a faulty taillight. As Justice Sotomayor has eloquently explained, it is a real concern that these expanded rules regarding lawful seizures will adversely impact minorities: This Court has given officers an array of instruments to probe and examine you. When we condone officers’ use of these devices without adequate cause, we give them reason to target pedestrians in an arbitrary manner. We also risk treating members of our communities as second-class citizens. [[Image here]] As the Justice Department notes, ... many innocent people are subjected to the humiliations of these unconstitutional searches. The white defendant in this case shows that anyone’s dignity can be violated in this manner. See M. Gott-schalk, Caught 119-138 (2015). But it is no secret that people of color are disproportionate victims of this type of scrutiny. See M. Alexander, The New Jim Crow 95-136 (2010). For generations, black and brown parents have given their children “the talk”—instructing them never to run down the street; always keep your hands where they can be seen; do not even think of talking back to a stranger—all out of fear of how an officer with a gun will react to them. See, e.g., W.E.B. Du Bois, The Souls of Black Folk (1903); J. Baldwin, The Fire Next Time (1963); T. Coates, Between the World and Me (2015). [[Image here]] We must not pretend that the countless people who are routinely targeted by police are “isolated.” They are the canaries in the coal mine whose deaths, civil and literal, warn us that no one can breathe in this atmosphere. See L. Guilder & G. Torres, The Miner’s Canary 274-283 (2002). They are the ones who recognize that unlawful police stops corrode all our civil liberties and threaten all our lives. Until their voices matter too, our justice system will continue to be anything but. Utah v. Strieff, — U.S. —, 136 S.Ct. 2056, 2069-71, 195 L.Ed.2d 400 (2016) (Sotomayor, J., dissenting) (citation omitted). In this case, the majority announces a bright-line rule for cases involving a routine traffic stop but then explains how the facts of this case were anything but routine. See majority op. at 107. Regardless, I agree that “under the specific facts of this case,” id. at 108, the length of the traffic stop was reasonable, and subsequent United States Supreme Court precedent requires that we disapprove of Wilson v. State, 734 So.2d 1107 (Fla. 4th DCA 1999). Because we are bound to follow the United States Supreme Court precedent “on search and seizure issues,” I concur but I would hot announce a bright-line rule.